**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 96-4188

CURTIS LEE O'NEAL,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-93-40-V)

Argued: April 9, 1999

Decided: June 2, 1999

Before LUTTIG and WILLIAMS, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Williams and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Harold Johnson Bender, LAW OFFICE OF HAROLD J.
BENDER, Charlotte, North Carolina, for Appellant. Brian Lee Whis-
ler, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON
BRIEF:** Mark T. Calloway, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for
Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Curtis Lee O'Neal appeals from his federal conviction for unlawful possession of a firearm and his enhanced sentence as an armed career criminal. He contends that the district court should have granted him a new trial because of jury misconduct and that there were not three predicate convictions to support his enhanced sentence. For the reasons that follow, we affirm.

I.

In April 1995, a jury in the Western District of North Carolina convicted O'Neal of one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1), which outlaws possession of a firearm, in or affecting interstate commerce, by any person "who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year." The district court denied O'Neal's motion for a new trial on this charge in June 1995. The predicate conviction on which the government relied to trigger section 922(g)(1)'s prohibition was O'Neal's conviction in April 1988 in North Carolina state court for assault with a deadly weapon with intent to kill and inflicting serious injury. At sentencing on O'Neal's firearm possession conviction, the district court, adopting the presentence report ("PSR") "for all purposes of this sentencing," agreed with the PSR's conclusion that O'Neal had at least three previous convictions (including the 1988 conviction) for violent felonies or serious drug offenses, see 18 U.S.C. § 924(e), and was therefore an armed career criminal subject to an enhanced sentence under section 4B1.4 of the sentencing guidelines. The court ultimately sentenced him to 262 months, the bottom of his guideline range.

O'Neal appeals, raising two arguments. He first argues that the district court abused its discretion by denying his motion for a new trial based upon jury misconduct. Second, he challenges the propriety of using two of the predicate convictions on which the government relies for his status as an armed career criminal -- his North Carolina state convictions in 1975 and 1977.

2

II.

We need not dwell on O'Neal's claim that the district court abused its discretion in denying his motion for a new trial on grounds of jury misconduct, because this claim is meritless. Immediately after the jury rendered its verdict, the foreman and another juror informed the court and counsel that some jurors had been concerned to see O'Neal taking notes during jury selection, and that those jurors had feared that he would use the recorded information to retaliate against them. Because of this concern expressed by members of the jury, O'Neal moved for a mistrial.

The district court denied the motion for three reasons. First, the motion was untimely, having been filed over two months after the date of the verdict. See Fed. R. Crim. P. 33 (generally imposing seven-day time limit on motion for new trial). Second, given the over-whelming evidence of O'Neal's guilt, the court did not believe that the jurors' fears affected their verdict. Third, the court held that it could not apply Rule 33's longer period for bringing motions based on newly discovered evidence, because there was no such evidence. Rather, the district court reasoned, O'Neal possessed all of the evidence to support his motion "within ten minutes of the jury's verdict being returned." We see no abuse of discretion in denying O'Neal's motion on such reasoning, and certainly no "clear abuse." United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995).

III.

O'Neal raises two challenges to his enhanced sentence as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. He first argues that when, in 1983, North Carolina discharged his 1975 and 1977 convictions (by ending his parole), it applied the law in effect when he committed those offenses, pursuant to which it immediately restored his right to possess firearms. If the state did proceed as O'Neal suggests, the 1975 and 1977 convictions cannot, for the reasons discussed below, be used as predicate convictions for treating him as an armed career criminal under section 924(e), and, as a consequence, there are not three predicate convictions to support O'Neal's enhanced sentence. On the other hand, if, in 1983, North Carolina instead applied the law in effect in 1983, O'Neal could not then pos-

3

sess firearms, and these two convictions are therefore valid predicates. O'Neal argues, however, that if we conclude that North Carolina did in fact apply the law in effect in 1983, application of that law violated the Ex Post Facto Clause. U.S. Const., Art. I, § 10. Finally, as his second challenge to his status as an armed career criminal, O'Neal argues that the 1977 conviction cannot be a predicate conviction because he lacked notice that it might be so used. We reject each of these arguments.

A.

Section 4B1.4 of the sentencing guidelines imposes an enhanced sentence on anyone who is an armed career criminal under 18 U.S.C. § 924(e)(1). Section 924(e)(1) applies to anyone "who violates section 922(g) of [Title 18] and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense, or both . . . ." As we explained in United States v. Clark, 993 F.2d 402, 403 (4th Cir. 1993), this language requires, among other things, that the three predicate convictions be "of the type referred to in § 922(g)(1)." Section 922(g)(1) applies to convictions for crimes "punishable by imprisonment for a term exceeding one year." There is, however, an important exception:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). In determining whether a "restoration of civil rights expressly provides that the person may not . . . possess . . . firearms," we look to the law of the jurisdiction of conviction, see id. (here, the State of North Carolina), and consider the jurisdiction's entire body of law, not merely, for example, the jurisdiction's certificate of restoration of rights, received upon discharge of a conviction. McLean v. United States, 904 F.2d 216, 218 (4th Cir. 1990). Thus, by the interrelation of these three statutory provisions, sections 921(a)(20), 922(g)(1), and 924(e), a previous conviction may not serve as a predicate for application of section 924(e) if the jurisdiction

4

of conviction has restored to the defendant the civil rights, including the right to possess firearms, that it stripped from him upon his conviction.

O'Neal has four previous convictions that might serve as predicate convictions under section 924(e). The first is the 1988 conviction. O'Neal does not challenge its use as a predicate conviction. The second is a conviction in August 1983 in South Carolina for trafficking in marijuana. The government, however, no longer seriously contends that this conviction is a valid predicate, but rather admits that South Carolina fully restored O'Neal's civil rights when it discharged this conviction in 1987. Third, in June 1977, O'Neal was convicted in North Carolina for a felony larceny that occurred in March 1975.[1] North Carolina discharged this conviction in May 1983. Finally, in August 1975, O'Neal was convicted in North Carolina for breaking and entering, felony larceny, and safecracking. North Carolina discharged this conviction in May 1983, the same day as the 1977 conviction.

In evaluating the validity of the 1975 and 1977 convictions as predicate convictions under section 924(e), it is necessary to understand how North Carolina's Felony Firearms Act changed from its inception through 1983. The original version, enacted in 1971, outlawed possession of a firearm by any person convicted of a crime punishable by imprisonment for two or more years, N.C. Gen. Stat. § 14-415.1(a); section 14-415.2, however, exempted those whose civil rights had been restored.[2] Other laws then in effect generally restored a felon's civil rights two years after discharge of his conviction. See State v. Currie, 202 S.E.2d 153, 154-55 (N.C. 1974). In 1973, North Carolina amended its laws to restore civil rights immediately upon

---

[1] In his pro se supplemental brief, O'Neal, disagreeing with the PSR, the government, and his own counsel's reply brief, claims that this conviction actually occurred in August 1975, with June 1977 merely being the date of sentencing. We need not resolve this question, however, because, for reasons discussed below, whether the conviction occurred in 1975 or 1977 is irrelevant to its validity as a predicate under section 924(e). The key date is, instead, when the conviction was discharged.

[2] 1971 N.C. Sess. Laws, ch. 954,§ 1.

5

discharge of a conviction,**3** but it did not then amend section 14-415.2. The effect was to restore a felon's right to possess firearms immediately upon discharge of his conviction. See 202 S.E.2d at 155-56. As we have explained, "[w]hen it became apparent that this would make virtually all felons exempt from the Firearms Act, the General Assembly repealed" section 14-415.2. McLean, 904 F.2d at 218-19 (citation omitted). At the same time, in 1975, the state legislature amended section 14-415.1 to limit the ban on possession of a firearm to five years from the date of a conviction's discharge.**4** See 904 F.2d at 218. These revisions took effect in October 1975, after O'Neal had committed the offenses that led to his 1975 and 1977 convictions, and, except for some minor changes not relevant here, they remained in effect in 1983, when North Carolina discharged those convictions.**5**

The propriety of treating O'Neal as an armed career criminal under section 924(e) thus turns entirely on whether, in 1983, he was able to take advantage of the (inadvertently) lenient North Carolina law in effect from 1973 to 1975 or rather was subject to the five-year waiting period enacted in 1975 and in effect in 1983. If the former, he regained his right to possess firearms in May 1983, and neither the 1975 nor 1977 conviction may count as a predicate conviction. There would then be only one valid predicate conviction under section 924(e) -- the 1988 conviction -- and the district court would therefore have erred by enhancing O'Neal's sentence. If the latter, however, O'Neal's right to possess firearms in North Carolina was not restored until May 1988, five years after discharge. But this was at least a month after his 1988 conviction, which once again deprived him of the right to possess firearms, and that disability continued until at least June 1997, well after O'Neal's conviction in this case. Thus, if the five-year waiting period applied to O'Neal's 1975 and 1977 convictions, North Carolina never effectively restored his right to possess firearms following those convictions, and they both are valid

_____

**3** 1973 N.C. Sess. Laws, ch. 251, codified at N.C. Gen. Stat. § 13-1 et seq.
**4** 1975 N.C. Sess. Laws, ch. 870.
**5** In December 1995, North Carolina again amended section 14-415.1. See N.C. Gen. Stat. § 14-415.1(a) (Michie 1994 & Supp. 1995) and accompanying historical notes. These changes are not relevant to this case.

predicate convictions under section 924(e). See United States v. Clark, 993 F.2d 402, 405 (4th Cir. 1993) (looking to whether, following a conviction, the defendant ever actually had the right to possess firearms in the state of conviction, rather than analyzing each conviction in isolation). In conjunction with the 1988 conviction, O'Neal then would have three predicate convictions under section 924(e), and the district court would have been correct to sentence him as an armed career criminal.

Turning first to the question of which version of the Felony Firearms Act North Carolina actually applied to O'Neal in 1983, we conclude that it applied the Act in effect in 1983. North Carolina, in determining the right to possess firearms upon discharge from a conviction, does not, as O'Neal urges, apply the law in effect on the date of the offense or conviction, but rather the law in effect on the date of discharge. See State v. Tanner, 251 S.E.2d 705 (N.C. App. 1979) (applying post-1975 version of Felony Firearms Act to determine right of defendant to possess firearms following discharge in 1977 of predicate conviction from 1968); State v. Cobb, 196 S.E.2d 521 (N.C. App. 1973) (applying original Felony Firearms Act to determine right to possess firearms in 1972, even though predicate conviction predated its enactment; rejecting ex post facto challenge), rev'd on other grounds, 201 S.E.2d 878 (N.C. 1974).[6]

Having concluded that North Carolina applied the Felony Firearms Act as it stood in 1983, not 1975, to O'Neal's right to possess firearms in 1983, we next consider his argument that in doing so North

_____

[6] We have no occasion to pass on any issues regarding whether North Carolina would allow a change in its laws to strip a felon of his previously restored right to possess firearms, and if so what effect that would have under sections 922(g)(1) and 924(e), or whether that would violate the Ex Post Facto Clause. We need only determine what law North Carolina applied in May 1983, since the Felony Firearms Act did not change between 1983 and 1988. See generally United States v. Haynes, 961 F.2d 50, 51-52 (4th Cir. 1992) (in reversing conviction under § 922(g)(1), invoking West Virginia's presumption against retroactivity to justify applying state law in effect on date that defendant's civil rights (including right to possess firearms) were restored, rather than law in effect on date of possession, which made it a misdemeanor for a convicted felon to carry a firearm).

7

Carolina violated the Ex Post Facto Clause. We reject this argument because the Act does not impose "punishment."

Other circuit courts, considering similar changes to the laws of other states in cases under sections 922(g)(1) or 924(e), appear to have split over the ex post facto issue. See United States v. Huss, 7 F.3d 1444 (9th Cir. 1993) (rejecting ex post facto challenge), overruled on other grounds, United States v. Sanchez-Rodriquez, 161 F.3d 556 (9th Cir. 1998) (en banc). Cf . Roehl v. United States, 977 F.2d 375 (7th Cir. 1992) (similar). But see United States v. Davis, 936 F.2d 352 (8th Cir. 1991) (finding ex post facto violation, but upholding 924(e) sentence on other ground). We have never addressed this precise question. Cf. United States v. Herron, 38 F.3d 115 (4th Cir. 1994) (applying West Virginia law enacted in 1989 to determine right of felon to possess firearms in 1992, where predicate conviction occurred before 1989 but was discharged after 1989; not discussing ex post facto issue).

The Ex Post Facto Clause bars laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts," Collins v. Youngblood, 497 U.S. 37, 43 (1990), only the latter of which is relevant in this case. The Supreme Court has phrased the second part of this rule as prohibiting laws that retroactively "increase[ ] the penalty by which a crime is punishable." California Dep't of Corrections v. Morales, 514 U.S. 499, 507 n.3 (1995). "Punishment" and "penalty" are constitutional terms of art, defined in contradistinction to laws that are "civil," Kansas v. Hendricks, 521 U.S. 346, 361 (1997), or involve "regulation of a present situation," Flemming v. Nestor, 363 U.S. 603, 614 (1960) (quoting De Veau v. Braisted, 363 U.S. 144, 160 (1960) (plurality opinion of Frankfurter, J., joined by Clark, Whittaker, and Stewart, JJ.)). While laws that retroactively increase "punishment" or impose a "penalty" violate the Ex Post Facto Clause, retroactive civil or regulatory ones do not. See Hendricks, 521 U.S. at 361, 370; Flemming , 363 U.S. at 613-14. See also Collins, 497 U.S. at 41 ("[I]t has long been recognized by this Court that the constitutional prohibition on ex post facto laws applies only to penal statutes . . . .").

In determining whether a law imposes "punishment," the Supreme Court has, particularly in recent cases, applied a two-part test. The

8

Court first asks whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law. See Hendricks, 521 U.S. at 361; United States v. Ursery, 518 U.S. 267, 288-89 (1996); Russell v. Gregoire, 124 F.3d 1079, 1084, 1086-87 (9th Cir. 1997), cert. denied sub nom., Stearns v. Gregoire, 118 S. Ct. 1191 (1998). See also United States v. Salerno, 481 U.S. 739, 747 (1987) ("To determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent.").**7**

Second, even if the legislature did not intend to impose a punishment, a law still may be said to do so if the sanction or disability that it imposes is "so punitive in fact" that the law "may not legitimately be viewed as civil in nature." Ursery, 518 U.S. at 288 (internal quotation marks omitted). See id. at 290; Hendricks, 521 U.S. at 361. See

_____

**7** We realize that Salerno and Ursery were not ex post facto cases, and that the test for "punishment" is not necessarily the same in all constitutional contexts, see Ursery, 518 U.S. at 285 (holding that civil forfeiture was not "punishment" under Double Jeopardy Clause and distinguishing cases that involved the Eighth Amendment's Excessive Fines Clause). Salerno involved a substantive due process challenge to a law, and Ursery involved the Double Jeopardy Clause. But from Hendricks (which involved both the Double Jeopardy and Ex Post Facto Clauses) and from other cases, it is apparent that the Court applies the same test for "punishment" for at least the Ex Post Facto, Double Jeopardy, and Bill of Attainder Clauses, and for substantive due process. See Hendricks, 521 U.S. at 363, 366 (relying on Salerno); id. at 361-69 (treating Ex Post Facto and Double Jeopardy Clauses together for purposes of determining whether law at issue imposed "punishment"). See also Flemming, 363 U.S. at 613 (applying same test for "punishment" to challenges under Ex Post Facto Clause, Bill of Attainder Clause, and Sixth Amendment right to trial by jury); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963) (in case involving various rights under Fifth and Sixth Amendments, referring to "the tests traditionally applied to determine whether an Act of Congress is penal or regulatory," and citing to ex post facto cases, among others); Russell, 124 F.3d at 1086-87 (in ex post facto case, relying on Ursery, Hendricks, Mendoza-Martinez, and Flemming). We therefore freely draw on Ursery, Salerno, and Mendoza-Martinez, along with ex post facto cases such as Hendricks and Flemming.

9

also Flemming, 363 U.S. at 616-17 (looking first to "the language and structure" of the law, then to "the nature of the deprivation"). A defendant faces a "heavy burden" in making a showing of such a punitive effect, Hendricks, 521 U.S. at 361, and can succeed only on the "clearest proof," id. (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)); Ursery, 518 U.S. at 289 n.3, 290.

The analysis under this latter part of the test focuses upon whether the sanction or disability that the law imposes "may rationally be connected" to the legislature's non-punitive intent, or rather "appears excessive" in light of that intent. Salerno , 481 U.S. at 747 (internal quotation marks omitted). See Flemming, 363 U.S. at 614 (stating test as whether a "restriction of the individual comes about as a relevant incident to a regulation of a present situation") (quoting De Veau, 363 U.S. at 160); Flemming, 363 U.S. at 617 (finding "rational connection" between law's disability and legislature's intent). See also Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963) (similar). If there is a rational connection, the legislature's non-punitive intent will control. If instead the law's sanction or disability appears excessive, then the law is "so punitive in fact" as to amount to "punishment." As the First Circuit explained in a thorough opinion rejecting an ex post facto challenge to the predecessor of 18 U.S.C. § 922(g)(1):

> [I]f the past conduct which is made the test of the right to engage in some activity in the future is not the kind of conduct which indicates unfitness to participate in the activity, it will be assumed, as it must, that the purpose of the statute is to impose an additional penalty for the past conduct. If, however, the past conduct can reasonably be said to indicate unfitness to engage in the future activity the assumption will be otherwise.

Cases v. United States, 131 F.2d 916, 921 (1st Cir. 1942).

Applying this two-part test, we conclude that North Carolina, in amending the Felony Firearms Act to deprive felons of the right to possess firearms for five years following the discharge of their convictions, had a non-punitive intent, and that the deprivation the Act imposes is consistent with that intent. The Act is merely a measured

10

public safety provision whose applicability to those previously convicted of felonies is eminently reasonable. Therefore, the Act does not impose "punishment," and its application to those who committed felonies before its enactment does not violate the Ex Post Facto Clause.**8**

With regard to the first part of the test, North Carolina has made clear that its intent was to enact a civil disability to protect the public from those, felons, whose possession of guns there was the most reason to fear, not to impose any punishment or penalty on felons. In Cobb, 196 S.E.2d at 524, the North Carolina Court of Appeals rejected an Ex Post Facto Clause challenge to the initial version of the Felony Firearms Act. In so doing, it relied entirely on Williams v. United States, 426 F.2d 253 (9th Cir. 1970), in which the court had upheld a "similar" law, Cobb, 196 S.E.2d at 254, against such a challenge by explaining that it was "civil rather than penal." Williams, 426 F.2d at 255. Thus, the Cobb court viewed the Felony Firearms Act as civil. More recently, in Tanner, the North Carolina Court of Appeals similarly explained that the purpose of the Felony Firearms Act was "protection of the people from violence," 251 S.E.2d at 706, a purpose that the Supreme Court has recognized as "a legitimate regulatory goal." Salerno, 481 U.S. at 747. See Hendricks, 521 U.S. at 363; Salerno, 481 U.S. at 748-49. The Act itself, as it stood in 1983 (the current version is the same in this regard), is consistent with the interpretation of North Carolina's courts, since it bars only the sorts of firearm possession by felons that, because of the concealability, power, or location of the firearm, are most likely to endanger the general public. See N.C. Gen. Stat. § 14-415.1(a) (banning possession only of handguns, short firearms, and weapons "of mass death and destruction," and exempting from the ban possession of "a firearm within [a felon's] own home or on his lawful place of business").

In the face of this "manifest intent," Hendricks, 521 U.S. at 361,

_____

**8** **United States** v. Lominac , 144 F.3d 308 (4th Cir. 1998), on which O'Neal relies, did not present the question of whether a law imposed "punishment" and so is not relevant to our analysis. In Lominac, we held that a state's change in its rules governing supervised release violated the Ex Post Facto Clause because it increased Lominac's sentence. See id. at 313-16. There was, understandably, no argument that increasing a prison sentence does not constitute "punishment."

11

we see no clear proof that the Act imposes a disability "so punitive," see id., as to negate such intent. Rather, the rational connection between the law and its intent is undeniable. A legislature's "judgment that a convicted felon . . . is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational." Lewis v. United States, 445 U.S. 55, 67 (1980) (holding that federal ban on possession of firearms by felons applies even where predicate conviction may be subject to collateral attack, and that ban has rational basis and therefore does not deprive felons of equal protection of the laws). Such a law imposes an "essentially civil disability." Id. As the court in Cases explained, "[s]urely it is reasonable to conclude that one who has been convicted of a crime of violence is the kind of a person who cannot safely be trusted to possess and transport arms and ammunition." 131 F.2d at 921. Such persons have "demonstrated their unfitness to be entrusted with such dangerous instrumentalities." Id. See Hendricks, 521 U.S. at 358 ("As we have recognized, previous instances of violent behavior are an important indicator of future violent tendencies." (internal quotation marks omitted)).

Other considerations that the Supreme Court has found relevant in determining whether a law's sanction or disability is so punitive as to override a legislature's non-punitive intent support our conclusion that the Felony Firearms Act does not impose punishment. See Mendoza-Martinez, 372 U.S. at 168-69 (listing factors); Ursery, 518 U.S. at 291-92 (considering these factors); Hendricks, 521 U.S. at 361-63 (same). First, although the law does impose an "affirmative disability," Mendoza-Martinez, 372 U.S. at 168, on felons, it is a mild one, far less onerous than many others that the Court has upheld as not constituting "punishment." See Lewis , 445 U.S. at 66 ("This Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm.") (citing ex post facto cases); Hawker v. New York, 170 U.S. 189, 195-97 (1898) (holding that ban on practice of medicine by felons did not impose punishment and therefore did not violate Ex Post Facto Clause). Second, Lewis suggests (as does Cases) that such a disability as the Act imposes has not historically been regarded as punishment. Third, the Act includes no scienter requirement, and does not apply to conduct that is already criminal, see U.S. Const., Amend. II. Finally, although the Act may

12

further the criminal-law aim of deterrence, deterrence can serve civil purposes, Ursery, 518 U.S. at 292, and a law that deprives persons of the ability to commit certain crimes -- here, those involving firearms -- presupposes that for those persons the deterrence of the criminal law may not be sufficient, and that an additional civil disability may be necessary to protect the public. See Hendricks, 521 U.S. at 362-63.

In upholding North Carolina's Felony Firearms Act against O'Neal's Ex Post Facto Clause challenge, we agree with the Ninth Circuit's decision in Huss, which, prior to Ursery and Hendricks, upheld a similar Oregon law against such a challenge in the context of a conviction under section 922(g)(1), and did so chiefly on the authority of Cases. See Huss, 7 F.3d at 1446-48.**9** We necessarily disagree with the Eighth Circuit's decision in Davis. In Davis, which, like this case, presented a challenge to the applicability of section 924(e), the court held that the Ex Post Facto Clause required Minnesota to apply the law in effect at the time of conviction (which restored the right to possess firearms upon discharge) rather than the law in effect at the time of discharge (which imposed a ten-year waiting period) to determine whether Davis could possess firearms upon his discharge. See 936 F.2d at 356-57. We find Davis unpersuasive chiefly for two reasons. First, the court assumed an answer to the very question at issue -- whether the change in Davis' right to possess firearms imposed "punishment." The court simply asserted that it did, see id. at 356, 357 n.5, and the court's conclusion that the change violated the Ex Post Facto Clause necessarily followed, see id. at 356 ("Thus, at the time of Davis's 1971 conviction, part of his punishment

_____

**9** The Seventh Circuit has indirectly taken the same view. In Roehl, the court held that a Wisconsin statute that appeared to restore all of a convict's civil rights upon discharge did not actually do so. As "evidence" for this interpretation, the court pointed both to state caselaw holding that this statute did not restore the right to hold public office and to another state law, enacted after the defendant's predicate convictions had been discharged, that barred all felons from possessing a gun, regardless of when they were convicted. 977 F.2d at 377-78. The court briefly noted that its reliance on this latter statute as evidence did not create an "ex post facto effect," and added, "[w]e have no doubt that if Roehl had been prosecuted for violation of [the latter statute], his earlier convictions could have been predicates without violation of the ex post facto provision." Id. at 378.

13

was that his civil rights would be impaired only until he was discharged from his conviction."). The very presence, without comment, of "punishment" and "civil" in this sentence points to the critical issue that the court overlooked. Second, and related, the court did not consider, or even cite, any of the extensive Supreme Court caselaw on the meaning of "punishment."**10**

In light of all of the foregoing, we hold that in 1983, when North Carolina discharged O'Neal's 1975 and 1977 convictions, the Felony Firearms Act in effect in 1983 barred him from possessing firearms for five years. Because, before the expiration of that five-year period, he was convicted of the 1988 offense, North Carolina never fully restored his civil rights after his 1975 and 1977 convictions, see Clark, 993 F.2d at 405, and they are therefore, along with the 1988 conviction, valid predicate convictions for purposes of 18 U.S.C. § 924(e).

B.

O'Neal raises an additional challenge to the use of his 1977 conviction as a predicate under 18 U.S.C. § 924(e). He argues that this conviction should not count because the government did not include it in the notice that it filed with the district court of its intent to seek an enhanced sentence. We reject this argument because O'Neal had adequate notice that the 1977 conviction was a possible predicate conviction.

There is no requirement that the government list, either in the indictment or "in some formal notice," the predicate convictions on which it will rely for a section 924(e) enhancement. United States v. Alvarez, 972 F.2d 1000, 1006 (9th Cir. 1992). See United States v. Tracy, 36 F.3d 187, 198 (1st Cir. 1994). Although a defendant does

_____

**10** The Eighth Circuit's conclusion regarding the ex post facto effect of the change in Minnesota law also appears to have been unnecessary to the result in Davis, as the court went on to conclude that Minnesota did not restore Davis' right to possess firearms, because federal law at the time of both his conviction and discharge barred him from possession, and Minnesota had, upon restoring his civil rights, informed him of this disability. Id. at 357. The court therefore affirmed Davis' sentence.

14

have a right to adequate notice of the government's plan to seek such an enhancement, see United States v. Sullivan, 98 F.3d 686, 688 (1st Cir. 1996); cf. United States v. Mobley, 40 F.3d 688, 691 (4th Cir. 1994) (referring to government "[h]aving provided proper notice" of intent to invoke section 924(e)), and of the convictions that may support that enhancement, see United States v. Hudspeth, 42 F.3d 1015, 1024 n.17 (7th Cir. 1994) (en banc); Tracy, 36 F.3d at 198, the listing of these convictions in the PSR is more than adequate to provide such notice, see id.; Sullivan, 98 F.3d at 688; cf. Hudspeth, 42 F.3d at 1019 n.6 (explaining that a "certified record of conviction or a [PSR], if not challenged, will normally satisfy" the government's burden of establishing "that a defendant has three prior felony convictions"); United States v. Morrell, 61 F.3d 279, 279-80 (4th Cir. 1995) (affirming sentence under section 924(e) where possibility of its application, and the possible predicate offenses, were not raised until the PSR, and government initially objected to use of one of the three predicate convictions listed in the PSR; not discussing notice).

In light of the prominence of the 1977 conviction in the PSR in this case, and the opportunity O'Neal had (and took) to object to its use, we conclude that he had adequate notice. The PSR explicitly relied on the 1977 conviction as a possible predicate for subjecting O'Neal to an enhanced sentence as an armed career criminal, and also gave a full description of the offense. Thus, O'Neal had every reason to object to its use, and in fact did so, both in his written objections to the PSR, J.A. at 302 (arguing that the 1977 conviction "is not a crime of violence" and that O'Neal had had his civil rights restored), and at his sentencing hearing, J.A. at 261 (repeating argument that 1977 conviction was not a crime of violence, and adding that government had not "filed a notice on" it).[11] We therefore conclude that the 1977 con-

_____

[11] O'Neal's opening brief on appeal, written before the government allegedly surprised him with the 1977 conviction, further proves his awareness of this conviction. He wrote as follows:"[O]ne of the predicate offenses for the enhanced sentence . . . was the August 28, 1975 conviction for breaking and entering, larceny and safecracking. The criminal conduct underlying these convictions occurred on June 2, 1975 and June 18, 1975, respectively." Appellant's Br. at 10 (emphases added). As the PSR demonstrates, June 2 was the date of arrest for the offenses that led to the 1975 conviction (the conduct having occurred in

15

viction, along with those in 1975 and 1988, formed the three predicates necessary to support applying 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 to O'Neal, and we affirm his sentence.

IV.

The judgment of the district court is affirmed.

AFFIRMED

_____

February), whereas June 18 was the date of arrest for the offense that led to the 1977 conviction (the conduct having occurred in March 1975). J.A. at 291. Thus, O'Neal is referring, albeit unclearly, to both the 1975 and 1977 convictions, which, as already noted, the PSR did clearly distinguish.