UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 03-4193
(CR-02-230)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL ANTHONY FARROW,

Defendant - Appellant.

O R D E R

The court amends its opinion filed April 15, 2004, as follows:

On page 7, line 2 -- the phrase "crime of violence" is deleted and replaced with the word "felony."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

MICHAEL ANTHONY FARROW,

      *Defendant-Appellant.*

No. 03-4193

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-02-230)

Argued: February 27, 2004

Decided: April 15, 2004

Before WILLIAMS, KING, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Williams and Judge King joined.

---

## COUNSEL

**ARGUED:** Terry F. Rose, Smithfield, North Carolina, for Appellant. Paul Alexander Weinman, Assistant United States Attorney, Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Thomas N. Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Winston-Salem, North Carolina, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Michael Anthony Farrow appeals the district court's order denying his motion to dismiss the federal indictment against him in this case. Farrow was indicted under 18 U.S.C. § 922(g)(1), which prohibits any person convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm in or affecting interstate commerce. Farrow moved to dismiss the indictment on the grounds that he was not a convicted felon within the meaning of the federal firearms statute. We affirm the order of the district court for the reasons set forth below.

I.

On February 12, 1990, Farrow pled guilty to four counts of felonious sale of cocaine in a North Carolina state court. Following his guilty plea, Farrow was sentenced to a five-year term of imprisonment. On September 26, 1990, Farrow was released from custody into the supervision of the state Parole Commission. The Parole Commission granted Farrow an unconditional discharge on February 21, 1992. Farrow received a Certificate of Unconditional Discharge which provided that "all rights of citizenship which the said Michael Anthony Farrow forfeited on conviction are by law automatically restored." Despite this general restoration of his civil rights, however, Farrow remained under a temporary firearms disability in accordance with the North Carolina Felony Firearms Act, which at the time provided that:

> It shall be unlawful for any person who has been convicted of any crime set out in subsection (b) of this section to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches . . . *within five years* from the date of such conviction, or the unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such a conviction, whichever is later.

N.C. Gen. Stat. § 14-415.1(a) (1988) (emphasis added).

On November 12, 2001, nearly ten years after his unconditional discharge, Farrow was stopped by North Carolina police officers while traveling on a state highway. The officers searched the vehicle and found two handguns and a shotgun which Farrow admitted belonged to him.* Farrow was subsequently indicted by a federal grand jury on a single count of possessing a firearm after having been convicted of a crime punishable by imprisonment for more than a year, in violation of 18 U.S.C. § 922(g)(1). Section 922 provides that:

> (g)   It shall be unlawful for any person—
>
> (1)   who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Farrow went to trial on the sole argument that his state drug conviction could not properly be considered a predicate conviction under § 922. Farrow pointed to § 921(a)(20) of the federal firearms statute, which provides the definition of a "crime punishable by imprisonment for a term exceeding one year" under § 922. Section 921(a)(20) provides in pertinent part that:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such

---

*Farrow concedes that his vehicle was lawfully stopped and searched by the police. In addition, he admits that the firearms were manufactured outside of North Carolina and thus had to travel in interstate commerce in order to be found within the state.

> pardon, expungement, or restoration of civil rights expressly
> provides that the person may not ship, transport, possess, or
> receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

Farrow argued that under the North Carolina law in effect at the time of his drug conviction, his right to possess a handgun would have been restored in February 1997 — five years after his unconditional discharge. In 1995, however, the North Carolina legislature amended section 14-415.1 to replace the five-year temporary handgun disability with a permanent ban on the possession of handguns and certain other firearms by ex-felons. The statute currently provides that:

> It shall be unlawful for any person who has been convicted
> of a felony to purchase, own, possess, or have in his cus-
> tody, care, or control any handgun or other firearm with a
> barrel length of less than 18 inches or an overall length of
> less than 26 inches . . . .
>
> . . . .
>
> Nothing in this subsection would prohibit the right of any
> person to have possession of a firearm within his own home
> or on his lawful place of business.

N.C. Gen. Stat. § 14-415.1(a) (2003).

Farrow pointed out that but for the 1995 amendment to section 14-415.1, all rights lost as a result of his prior drug conviction — including the right to possess a handgun — would have been fully restored, such that his drug conviction would not have counted as a predicate conviction under § 922(g)(1). Thus, Farrow argued that the 1995 amendment, which placed a permanent ban on the possession of handguns by ex-felons and retroactively denied him a full restoration of civil rights, was unconstitutional as an ex post facto law. On this basis, Farrow moved the district court to dismiss the indictment. The district court denied his motion in light of our decision in *United*

*States v. O'Neal*, 180 F.3d 115 (4th Cir. 1999), which held that North Carolina's five-year handgun disability law did not violate the Ex Post Facto Clause. This appeal followed.

## II.

Whether the 1995 amendment to section 14-415.1 is ex post facto as applied to Farrow is a question of law reviewable de novo. *Plyler v. Moore*, 129 F.3d 728, 734 (4th Cir. 1997). The Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *O'Neal*, we observed that:

> "Punishment" and "penalty" are constitutional terms of art, defined in contradistinction to laws that are "civil," or involve "regulation of a present situation." While laws that retroactively increase "punishment" or impose a "penalty" violate the Ex Post Facto Clause, retroactive civil or regulatory ones do not.

*O'Neal*, 180 F.3d at 121-22 (citations omitted).

We apply a two-part test to determine whether a law is punitive or regulatory in nature. First, we must ask "whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law." *Id.* at 122. Second, even if it appears that the legislature did not intend to impose a punishment, we must determine whether the effect of the law is "so punitive in fact that the law may not legitimately be viewed as civil in nature." *Id.* (internal quotations omitted). "The analysis under this latter part of the test focuses upon whether the sanction or disability that the law imposes may rationally be connected to the legislature's non-punitive intent, or rather appears excessive in light of that intent." *Id.* (internal quotations omitted).

In *O'Neal*, we rejected the argument that retroactive application of the former five-year ban on handgun possession was punitive and therefore unconstitutional under the Ex Post Facto Clause. With

regard to the first prong of the ex post facto analysis, we relied on
several North Carolina decisions rejecting ex post facto challenges to
earlier versions of section 14-415.1, *see State v. Tanner*, 251 S.E.2d
705, 706 (N.C. Ct. App. 1979); *State v. Cobb*, 196 S.E.2d 521, 524
(N.C. Ct. App. 1973), *rev'd on other grounds*, 201 S.E.2d 878 (N.C.
1974). In light of these decisions, we concluded that "North Carolina
has made clear that its intent was to enact a civil disability to protect
the public from those, felons, whose possession of guns there was the
most reason to fear, not to impose any punishment or penalty on fel-
ons." *O'Neal*, 180 F.3d at 123.

In addressing the second part of the analysis, we concluded that the
effect of section 14-415.1 was not "so punitive in fact" that the law
should be considered punitive rather than regulatory in nature. We
observed that in prohibiting the possession of handguns and other
short firearms, section 14-415.1 was narrowly tailored to regulate
"only the sorts of firearm possession by felons that, because of the
concealability, power, or location of the firearm, are most likely to
endanger the general public." *Id.* In addition, the exception permitting
the possession of a handgun or other short firearm within a felon's
own home or on his lawful place of business further indicated that the
law was not punitive in effect. *Id.* Thus, we concluded that "the ratio-
nal connection between the law and its intent is undeniable. A legisla-
ture's judgment that a convicted felon is among the class of persons
who should be disabled from dealing in or possessing firearms
because of potential dangerousness is rational." *Id.* at 124 (internal
punctuation omitted).

Farrow does not argue with the holding of *O'Neal*. Instead, he con-
tends that "by expanding a relatively brief five-year probationary
period into an outright indefinite ban, the legislature has now mani-
fested a punitive intent." Br. of Appellant at 15. We disagree. Farrow
offers no persuasive argument that *O'Neal* is distinguishable on the
grounds that the handgun ban is now a permanent disability; nor do
we find any language in *O'Neal* to support the distinction. Rather, the
reasoning of *O'Neal* is directly applicable to the present case. The law
remains rationally connected to the state's legitimate interest in pro-
tecting the public. It continues to exempt the possession of firearms
within one's home or lawful place of business. The prohibition
remains limited to weapons that, because of their concealability, pose

a unique risk to public safety. Finally, the law affects only those persons who have been convicted of a felony and are thus
"unfit[ ] to be entrusted with such dangerous instrumentalities." *O'Neal*, 180 F.3d at 124.

## III.

We conclude that the retroactive application of section 14-415.1 to Farrow does not violate the Ex Post Facto Clause, and that, as a result, his drug conviction was properly counted as a predicate conviction under 18 U.S.C. § 922(g)(1). We accordingly affirm the judgment of the district court in all respects.

*AFFIRMED*