**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-4958**

_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

BARION LEE HAIRSTON, a/k/a Big Daddy,

              Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, Jr., District Judge. (1:08-cr-00060-WO-1)

_____

Argued: December 3, 2009          Decided: February 4, 2010

_____

Before TRAXLER, Chief Judge, NIEMEYER, Circuit Judge, and John Preston BAILEY, Chief United States District Judge for the Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Bailey wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

_____

**ARGUED:** Thomas Norman Cochran, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Terry Michael Meinecke, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, L. Patrick Auld, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BAILEY, Chief District Judge:

Barion Hairston (Hairston or defendant) pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). At sentencing, the district court adopted the presentence investigation report (PSR) without objection. In particular, the PSR concluded that Hairston had at least three prior "violent felony" convictions,[1] qualifying him as an "armed career criminal" under the provisions of 18 U.S.C. § 924(e) and subjecting him to an enhanced sentence under U.S.S.G. § 4B1.4. After accepting the findings contained in the PSR, the district court imposed an enhanced sentence of 210 months imprisonment.

For the first time, on appeal, Hairston challenges the district court's use of these prior convictions to form a basis for the § 4B1.4 enhancement.[2] It is not disputed that his civil rights had once been restored under North Carolina law. Thus, Hairston argues, convictions for these offenses could not be used as predicate convictions to support an enhanced sentence.

---

[1] In particular, Hairston had the following prior felony convictions at the time of his arrest in 2007: (1) an August 1981 conviction for breaking and entering; (2) an August 1981 conviction for attempted robbery; (3) an August 1981 conviction for breaking and entering; (4) an August 1985 conviction for breaking and entering; and (5) an April 2003 conviction for habitual misdemeanor assault.

[2] Because this challenge was not raised before the district court, we review for plain error. See United States v. Olano, 507 U.S. 725 (1993).

We disagree, and for the reasons that follow, affirm the sentence.

I.

Section 4B1.4 of the sentencing guidelines imposes an enhanced sentence on anyone who is an armed career criminal as defined by 18 U.S.C. § 924(e)(1). Section 924(e)(1) applies to anyone who violates 18 U.S.C. § 922(g) and has three or more previous "violent felony" convictions.[3] As we explained in United States v. Clark, 993 F.2d 402, 403 (4th Cir. 1993), "violent felony" convictions are those "of the type referred to in 18 U.S.C. § 924(e)(2)(B)." Section 922(g)(1) applies to convictions for crimes "punishable by imprisonment for a term exceeding one year." However, as we recognized in United States v. O'Neal, 180 F.3d 115, 119 (4th Cir. 1999), there is "an important exception":

> Any conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

---

[3] Section 924(e) is also triggered by three or more previous "serious drug offense" convictions or a combination of the two.

In determining whether state law provides that a defendant's civil rights have been restored, the Court must look "to the whole of state law." See United States v. McLean, 904 F.2d 216, 218 (4th Cir.), cert. denied, 498 U.S. 875 (1990). We therefore must look to North Carolina law. "This inquiry requires an analysis of whether and to what extent [North Carolina] 'restores the civil rights' of ex-felons." United States v. Essick, 935 F.2d 28, 30 (4th Cir. 1991) (recognizing Congress' intent to empower states with authority to determine whether ex-felons would be legally permitted under federal law to possess firearms); see also Firearm Owner's Protection Act, Pub.L. No. 99-308, 100 Stat. 449 (1986).

## II.

North Carolina law restores to convicted felons some civil rights upon release from prison. See N.C. Gen. Stat. § 13-1. Upon his release in 1987, Hairston regained his "rights of citizenship," including his rights to vote, hold office, and serve jury duty. N.C. Gen. Stat. §§ 163-55(2) and 9-3; see McLean, 904 F.2d at 217 n.1. However, Hairston did not immediately regain his right to possess a firearm upon his release. At that time, North Carolina's Felony Firearms Act prohibited convicted felons from possessing firearms for five

5

years after release from prison. N.C. Gen. Stat. § 14-415.1(a) (1975).

In 1995, North Carolina amended the Felony Firearms Act to "replace the five-year temporary handgun disability with a *permanent* ban on the possession of handguns and certain other firearms by ex-felons[,]" regardless of the date of conviction. United States v. Farrow, 364 F.3d 551, 554 (4th Cir.), cert. denied, 543 U.S. 889 (2004) (emphasis added); see N.C. Gen. Stat. § 14-415.1(a) (1995).[4]

Hairston contends that the district court should have applied the 1975 version of North Carolina's Felony Firearms Act, which was in effect on October 1, 1992 (the date five years after discharge from his final 1980s conviction). In so doing, Hairston asserts, the district court would have been forced to find: (1) that his right to possess firearms was "restored" by North Carolina law and (2) that pursuant to the second sentence of section 921(a)(20) his 1980s convictions do not count as predicate offenses under section 924(e).

---

[4] Effective December 1, 2004, North Carolina amended the Felony Firearms Act to expand the scope of its restriction to include all firearms and, in so doing, retained the 1995 version's permanent ban. N.C. Gen. Stat. § 14-415.1(a) (2004). Finally, in 2006, the legislature modified the Felony Firearms Act to exempt "antique firearms" from the proscription of felons possessing firearms. 2006 N.C. Sess. Law, ch. 259, sec. 7(b).

In response, the Government argues that the 1995 version should apply. In support of this contention, the Government cites Clark, in which this Court held that "as a matter of federal law [] a state conviction for a violent felony is not excluded from consideration under § 924(e) by the provisions of § 921(a)(20) until the law of the relevant state *effectively* restores to the defendant the right to possess firearms." 993 F.2d at 405 (emphasis added). According to the Government, the 1995 amendment stripped Hairston of his previously restored right to possess a firearm. Accordingly, Hairston's right to possess firearms was not effectively restored at the time of his 2007 arrest.

## III.

The peculiar facts of this case form the basis of an issue of first impression in this Circuit. This issue is two-fold: (1) May a state retroactively strip a felon of a previously restored right to possess firearms and (2) if so, does that act revive a previously negated predicate conviction for purposes of applying a sentencing enhancement under sections 922(g)(1) and 924(e)?[5] A review of the recent case law of this Court and the

---

[5] In fact, in O'Neal, this Court explicitly noted, "We have no occasion to pass on any issues regarding whether North Carolina would allow a change in its laws to strip a felon of (Continued)

7

courts of North Carolina illustrates that an affirmative answer to each question is the next logical step in both courts' interpretations of the North Carolina Felony Firearms Act.

A.

With regard to the first question, it is important to conduct a brief overview of the case law addressing arguments that North Carolina's Felony Firearms Act is ex post facto.

In 1999, we rejected an argument that retroactive application of the former five-year ban on firearm possession was unconstitutional under the Ex Post Facto Clause. See O'Neal, 180 F.3d at 123. In so doing, this Court applied a two-part test. Id. at 122-123. In particular, a court should first ask whether the legislature's intent was to impose a punishment or merely enact a civil or regulatory law. Id. at 122. Next, a court should determine whether the disability is "so punitive in fact" as to negate any civil or regulatory intent. Id. In applying this test, we first found that "North Carolina has made clear that its intent to enact a civil disability to protect the public from those felons, whose possession of guns there was the

_____

his previously restored right to possess firearms, and if so what effect that would have under sections 922(g)(1) and 924(e) . . .." O'Neal, 180 F.3d at 121, n.6.

8

most reason to fear, not to impose any punishment on felons." Id. at 123. Second, we concluded that the five-year ban does not impose punishment; rather, the probationary period provides an additional civil disability in an effort to protect the public. Id. at 124.

In 2004, we rejected a similar argument attacking the retroactive application of the permanent ban adopted in 1995. See Farrow, 364 F.3d at 555. In Farrow, the defendant would have had his right to possess firearms restored in 1997 – five years after his unconditional discharge – but for the 1995 amendment to the Felony Firearms Act replacing the five-year ban on the possession of firearms by ex-felons with a permanent ban. Id. at 554. In finding no violation of the Ex Post Facto Clause, the Court cited O'Neal as controlling. Id. at 555. Like the five-year ban in O'Neal, the indefinite ban was found to be "rationally connected to the state's legitimate interest in protecting the public." Id.; see also State v. Johnson, 169 N.C.App. 301, 309, 610 S.E.2d 739, 745 (2005) (agreeing with the reasoning in Farrow and holding that the 1995 amendment does not violate the ex post facto clause of either the North Carolina or United States Constitutions).

In 2007, the Court of Appeals of North Carolina handled an appeal filed by Barney Britt, who had instituted a civil action against the State of North Carolina based on a claim that

9

retroactive application of the 2004 amendment to the Felony Firearms Act was, among other things, ex post facto. See Britt v. State (Britt I), 185 N.C. App. 610, 649 S.E.2d 402 (2007). In 1979, Britt was convicted of felony possession with intent to sell and deliver a controlled substance and completed his sentence in 1982. By operation of law under the Felony Firearms Act, his civil rights, including his right to possess a firearm, were restored in 1987. However, the 2004 amendment retroactively stripped this previously restored right. Id. at 404. This, Britt contended, was a violation of the ex post facto clauses of both the North Carolina and United States Constitutions. Id. at 406. In rejecting this contention, the Court of Appeals quoted O'Neal for the proposition that "North Carolina has made clear that its intent was to enact a civil disability to protect the public from those felons whose possession of guns there was the most reason to fear, not to impose any punishment or penalty on felons." Id. (quoting O'Neal, 180 F.3d at 123).

In 2009, however, the Supreme Court of North Carolina reversed Britt I, finding successful an as-applied challenge to the 2004 amendment based upon North Carolina's equivalent to the Second Amendment right to bear arms. Britt v. State (Britt II), 363 N.C. 546, 550, 681 S.E.2d 320, 323 (2009). Specifically, the Supreme Court found the 2004 amendment unconstitutional as

10

"an unreasonable regulation, not fairly related to the preservation of public peace and safety" as applied to Britt. Id. In reaching this conclusion, the Supreme Court explained:

> In particular, it is unreasonable to assert that a nonviolent citizen[6] who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety.

Id.

Accordingly, the Supreme Court reversed the Court of Appeals to the extent that the lower court found the 2004 amendment could be constitutionally applied to Britt. Id. In effect, the Supreme Court reversed on other grounds, i.e., Britt's state right to bear arms, leaving the ex post facto analysis intact. See id.

Therefore, taken together, O'Neal, Farrow, Johnson, Britt I, and Britt II uphold as constitutional the proposition that North Carolina's Felony Firearms Act retroactively strips a felon of a previously restored right to possess firearms.[7]

---

[6] This refers to the fact that Britt's underlying felony was a nonviolent drug offense, which did not involve the use of a firearm. Unlike Britt, Hairston is a violent citizen, as indicated by his previous "violent felony" convictions. Thus, Hairston's case is distinguishable from Britt II.

[7] The Court notes that, under circumstances like in Britt II, a felon's right to possess firearms may again be restored by judicial determination. This represents the sole limitation, under existing North Carolina case law, to the power of the
(Continued)

11

B.

Next, we must take up the remaining issue: whether stripping a restored right to possess firearms effectively revives a previously negated predicate conviction for purposes of sections 922(g)(1) and 924(e). Illustrative on this issue is Melvin v. United States, 78 F.3d 327 (7th Cir. 1996), a case cited in the ex post facto analysis in Britt I.

In Melvin, the defendant was convicted of felony offenses in 1974 and 1975. 78 F.3d at 328. He was released in 1977, and his firearm rights were restored in 1982.[8] Id. However, in 1984, Illinois enacted a firearms statute making it illegal for felons to possess weapons regardless of their date of conviction. Id. at 329. In other words, "[t]he Illinois felon in possession law clearly forbids all convicted felons from possessing guns, regardless of whether they were convicted before or after 1984." Id. at 330. In holding the defendant's prior convictions were predicate convictions for purposes of sections 922(g)(1) and 924(e), the Seventh Circuit explained:

North Carolina Felony Firearms Act to strip previously restored firearm rights.

[8] The Illinois firearms statute in effect at the relevant time provided the same five-year temporary ban as the North Carolina version Hairston now seeks to apply.

12

> Although Illinois law may have allowed Melvin to possess firearms between May 27, 1982 and July 1, 1984 (the effective date of Ill. Rev. Stat. ch. 38 para. 24-1.1, now codified as 720 ILCS 524-1.1), that does not require the permanent exclusion of Melvin's three Illinois convictions for purposes of invoking section 924(e)'s mandatory minimum sentences. Illinois did not allow Melvin to possess guns at the time of his arrest in 1998.

Id. at 330.

Like the 1984 version of the Illinois felon in possession law, the 1995 version of North Carolina's Felony Firearms Act clearly forbids all convicted felons from possessing guns, regardless of whether they were convicted before or after its effective date, December 1, 1995. Thus, the same logic applies: although North Carolina law may have allowed Hairston to possess firearms between October 1, 1992 (date of restoration) and December 1, 1995 (effective date of complete ban), that does not require the permanent exclusion of Hairston's 1980s convictions for purposes of invoking section 924(e)'s enhanced sentencing provisions. As for the Melvin Court, most significant for this Court is that North Carolina did not allow Hairston to possess guns at the time of his arrest in 2007. In other words, though Hairston's right to possess a weapon had once been restored, it had again been stripped by virtue of the 1995 amendment. As a result, these convictions were once again available for purposes of sections 922(g)(1) and 924(e). Accordingly, it was not plain

13

error for the district court to apply the enhanced sentencing provisions of section 924(e).

                                    IV.

Because Hairston's claim that his 1980s convictions should not trigger application of 18 U.S.C. § 924(e) fails on the merits, it fails pursuant to either plain error or *de novo* review. Accordingly, we affirm the district court's finding of armed career criminal status and the resulting imposition of a 210-month sentence.

                                                    AFFIRMED