STATE OF NORTH CAROLINA v. DOUGLAS DWAYNE WHITAKER, Defendant

No. COA08-1406

(Filed 8 December 2009)

## 1. Firearms and Other Weapons— possession of firearm by felon—constitutionality—preservation of public peace and safety

N.C.G.S. § 14-415.1, which prohibits the possession of firearms by convicted felons, was constitutional as applied to defendant because it was a reasonable regulation that prohibited a convicted felon who violated the law on numerous occasions from possessing firearms in order to preserve public peace and safety.

## 2. Appeal and Error— preservation of issues—issue decided in prior case

Our Court of Appeals has previously concluded that N.C.G.S. § 14-415.1, which prohibits the possession of firearms by convicted felons, does not violate the prohibition against *ex post facto* laws and is not an unconstitutional bill of attainder.

## 3. Sentencing— possession of firearm by felon—multiple convictions improper

Defendant should have been charged with only one violation of N.C.G.S. § 14-415.1, instead of eleven, and the convictions for which defendant received arrested judgments were reversed.

Judge ELMORE concurring in part and dissenting in part.

Appeal by defendant from judgments entered on or about 10 June 2008 by Judge Lindsay R. Davis, Jr. in Superior Court, Moore County. Heard in the Court of Appeals 22 April 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General E. Michael Heavner, for the State.*

*The Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr. and Amanda S. Zimmer, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of eleven counts of possession of a firearm by a felon. Defendant appeals on various constitutional grounds, primarily arguing that the recent decision of the United States Supreme Court, *District of Columbia v. Heller*, 554 U.S. ——, 171 L.E. 2d 637 (2008), requires this Court to hold that North Carolina's law prohibiting possession of firearms by convicted felons violates defendant's individual right to keep and bear firearms under the Second Amendment of the United States Constitution and Article I, Section 30 of the North Carolina Constitution. As we conclude that *Heller* has no effect upon the level of scrutiny which this Court has traditionally applied to regulations of the possession of firearms, we reject defendant's claim that *Heller* requires us to hold that N.C. Gen. Stat. § 14-415.1 is unconstitutional under either the Second Amendment or Article I, Section 30. We further reject defendant's contentions that N.C. Gen. Stat. § 14-415.1 is unconstitutional on any other grounds. However, because defendant should have been charged with only one violation of N.C. Gen. Stat. § 14-415.1, instead of eleven, we reverse the convictions for which defendant received arrested judgments. We find no error as to defendant's single conviction upon which he was sentenced and imprisoned.

## I. Background

The State's evidence tended to show that on or about 27 June 2005, Detective Sergeant George K. Dennis, a detective with the Moore County Sheriff's Office, saw some guns at defendant's residence. Detective Sergeant Dennis told defendant he could not have guns in his residence and informed defendant that

> [t]here had been a change of State law on December 1st of 2004. Up until that point convicted felons could keep long rifles and— and shotguns inside their residence. This was several months afterwards and we were just going—giving him the benefit of the doubt that maybe he didn't know about it and gave him a warning to remove the weapons from his—from his residence.

On 11 April 2006, Officer Connie Burns, a probation and parole officer in Moore County, discussed with defendant "that he was not to have firearms in [his] residence."

On 27 April 2006, Detective Sergeant Dennis, Officer Burns, Detective Sergeant John Andrew Conway, and one other detective sergeant searched defendant's residence. The law enforcement offi-

cials found "eleven rifles and shotguns in the gun cabinet in the defendant's bedroom." Detective Sergeant Conway told defendant "to come to the sheriff's office on May 8th at a scheduled time to have himself served with the warrants." On May 8th, defendant turned himself in at the sheriff's office.

On or about 9 April 2007, defendant was indicted for eleven counts of possession of a firearm by a felon. The indictments were based upon defendant's 22 April 1988 conviction for possessing cocaine. However, defendant has also had prior felony convictions for indecent liberties with a minor on 24 August 1989 and possessing cocaine on 27 June 2005. On 21 November 2007, defendant filed a motion to dismiss his indictments based on various constitutional grounds; defendant also filed motions to dismiss and consolidate indictments requesting that "all the . . . indictments but one [be dismissed], and that the State be permitted to amend the remaining indictment to include the additional weapons." Defendant's motions to dismiss and consolidate were denied.

On or about 10 June 2008, a jury found defendant guilty on all eleven counts. The trial court determined that defendant had a prior record level of five and sentenced him to 18 to 22 months imprisonment on one count, but arrested judgment on the other ten counts. Defendant appeals, claiming N.C. Gen. Stat. § 14-415.1 is unconstitutional both on its face and as applied to him.

## II. Standard of Review

"The standard of review for questions concerning constitutional rights is *de novo*. Furthermore, when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act." *Row v. Row* 185 N.C. App. 450, 454-55, 650 S.E.2d 1, 4 (2007) (citations, quotation marks, and ellipses omitted), *disc. review denied*, 362 N.C. 238, 659 S.E.2d 741, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 39 (2008).

## III. Right to Bear Arms

[1] Defendant first claims that his individual right to keep and bear arms under the Second and Fourteenth Amendments of the United States Constitution and under Article I, Section 30 of the North Carolina Constitution is a fundamental right that has been violated because N.C. Gen. Stat. § 14-415.1 prohibits him from keeping firearms in his home. Defendant challenges N.C. Gen. Stat. § 14-415.1 both facially and as applied.

A. Facial Challenge to N.C. Gen. Stat. § 14-415.1

Defendant's primary argument is that we must reexamine the holding of *Britt v. State*, 185 N.C. App. 610, 649 S.E.2d 402 (2007) upholding the constitutionality of N.C. Gen. Stat. § 14-415.1 in light of *District of Columbia v. Heller*, which held "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. ——, ——, 171 L.E. 2d 637, 683 (2008). Defendant contends that pursuant to *Heller*, any restriction of his "fundamental" right to keep and bear arms must now withstand strict scrutiny.

1. Standard of Review for a Facial Challenge to N.C. Gen. Stat. § 14-415.1

A heavy burden is imposed upon a party who attempts to make a facial challenge to a statute's constitutionality:

> A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully. . . . An individual challenging the facial constitutionality of a legislative act must establish that no set of circumstances exists under which the act would be valid. The fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.

*State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 281-82 (1998) (citations, quotation marks, and brackets omitted).

Our Supreme Court has stated that "[w]e seldom uphold facial challenges because it is the role of the legislature, rather than this Court, to balance disparate interests and find a workable compromise among them. This Court will only measure the balance struck in the statute against the minimum standards required by the constitution." *Beaufort County Bd. of Educ. v. Beaufort County Bd. of Comm'rs*, —— N.C. ——, ——, S.E.2d ——, (Aug. 28, 2009) (No. 106PA08) (citations omitted).

2. *Britt v. State*

However, though defendant contends we should reexamine *Britt v. State*, 185 N.C. App. 610, 649 S.E.2d 402 (2007), the North Carolina Supreme Court has recently reversed that opinion, though not unequivocally in defendant's favor. *See Britt v. State*, —— N.C. ——,

681 S.E.2d 320 (2009). In *Britt*, plaintiff Mr. Britt challenged the constitutionality of N.C. Gen. Stat. § 14-415.1 as amended in 2004 by filing a declaratory judgment action against the State, requesting in part that the court grant "declaratory relief by declaring the N.C.G.S. § 14-415.1, as amended by 2004 N.C. Sess. Law, c. 186, s. 14.1, unconstitutional and enjoining the Defendants from in any manner interfering with Plaintiff's right to purchase, own, possess, or have in his custody, care or control any firearm[.]" The trial court granted summary judgment in favor of the State, concluding, in pertinent part, that "N.C. Gen. Stat. § 14-415.1 is constitutional on its face and as applied to the Plaintiff."

On appeal, Mr. Britt argued that

the trial court erred by concluding the 1 December 2004 version of N.C. Gen. Stat. § 14-415.1 is constitutional. Specifically, plaintiff contend[ed] N.C.G.S. § 14-415.1 (2004) sweeps too broadly and is not reasonably related to a legitimate government interest. Plaintiff argue[d] that because he was not convicted of a violent felony and because his conviction is so far in the past, the statute prohibiting all convicted felons from possessing any type of firearm is unconstitutional.

*Britt v. State*, 185 N.C. App. 610, 613, 649 S.E.2d 402, 405 (2007), *rev'd and remanded by Britt v. State*, —— N.C. ——, 681 S.E.2d 320 (2009).

The majority of the Court of Appeals rejected Mr. Britt's arguments and determined that N.C. Gen. Stat. § 14-415.1, and specifically the 2004 amendment to the statute, was constitutional. *Id.*, 185 N.C. App. at 613-18, 649 S.E.2d at 405-08. However, Judge Elmore dissented, noting that he would hold N.C. Gen. Stat. § 14-415.1 as amended in 2004 facially unconstitutional. *Id.*, 185 N.C. App. at 619-21, 649 S.E.2d at 409-10 (Elmore, J., dissenting). Judge Elmore explained that

[t]he major differences between the 1995 and current versions of the statute lead me to conclude that the statute in its current form is no longer a reasonable regulation. Instead, I would hold that the current statute operates as an outright ban, completely divesting plaintiff of his right to bear arms without due process of law.

In enacting the 2004 amendment, the legislature simply overreached. Thereafter, the statute operated as a punishment, rather

than a regulation. Moreover, the statute as amended stripped plaintiff of his constitutional right to bear arms without the benefit of due process.

*Id.*, 185 N.C. App. at 621, 649 S.E.2d at 410 (Elmore, J., dissenting) (citation omitted).

Mr. Britt appealed to the North Carolina Supreme Court and presented numerous issues, including, *inter alia*, whether N.C. Gen. Stat. § 14-415.1 violated of the right to keep and bear arms under Article I, Section 30 of the North Carolina Constitution and the effect of *District of Columbia v. Heller*, 554 U.S. ——, 171 L.E. 2d 637 (2008). The Supreme Court chose to address only a single issue: "Whether the application of the 2004 amendment to N.C.G.S. § 14-415.1 to plaintiff violates his rights under N.C. Const. art. I, § 30." *Britt*, —— N.C. at ——, 681 S.E.2d at (quotation marks omitted). The Supreme Court emphatically declined to address the numerous other issues presented before it, including the facial challenge to N.C. Gen. Stat. § 14-415.1. *Id.*, —— N.C. at ——, 681 S.E.2d at ——. Furthermore, the Supreme Court did not address the proper scrutiny level for considering an individual's right to keep and bear arms. *Id.*, —— N.C. at ——, 681 S.E.2d at —— n.2 ("Because we hold that application of N.C.G.S. § 14-415.1 to plaintiff is not a reasonable regulation, we need not address plaintiff's argument that the right to keep and bear arms is a fundamental right entitled to a higher level of scrutiny."). The Supreme Court ultimately decided only "that N.C.G.S. § 14-415.1 is an unconstitutional violation of Article I, Section 30 of the North Carolina Constitution *as applied to this plaintiff.*" *Id.*, —— N.C. at ——, 681 S.E.2d at —— (emphasis added).

Thus, in summary, although defendant has argued that we must reexamine our own opinion in *Britt* due to *Heller*, by extension defendant argues that we must reconsider the many prior cases of this Court and the Supreme Court which use the rational basis test to evaluate regulations of firearms. Furthermore, the Supreme Court reversed this Court's opinion which had determined that N.C. Gen. Stat. § 14-415.1 was constitutional; however, the Supreme Court specifically declined to hold that N.C. Gen. Stat. § 14-415.1 is unconstitutional on its face. *See id.*, —— N.C. ——, 681 S.E.2d ——. In sum, we now must venture to navigate the strait presented by this case, between the Scylla of relying upon a reversed case and the Charybdis of holding a statute unconstitutional on its face, when our Supreme Court declined to so hold.

3. Article I, Section 30

The North Carolina Supreme Court has previously reviewed the history of Article I, Section 30:

It is obvious that the second amendment to the Federal Constitution—"A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed"—furnished the wording for the first part of the N.C. Constitution, Art. I § 24. Historical data and the reports of the deliberations and discussions which resulted in the wording of the second amendment and similar provisions in the constitutions of the original states lead to the conclusion that the purpose of these declarations (that a well regulated militia is necessary to the security of a free state) was to insure the existence of a state militia as an alternative to a standing army. Such armies were regarded as " 'peculiarly obnoxious in any free government.' " The framers of our constitutions were dedicated to the principle that the military should be kept under the control of *State v.* civil power. . . .

*State v. Dawson*, 272 N.C. 535, 545, 159 S.E.2d 1, 9 (1968) (citation omitted).

At the time *State v. Huntley* was decided [in 1843], the constitutional provision with reference to the right of the people to bear arms was contained in section 17 of the Bill of Rights, which was a part of our Constitution of 1776. It read as follows: "That the people have a right to bear arms for the defence of the state; and as standing armies, in time of peace, are dangerous to liberty, they ought not to be kept up; and that the military should be kept under strict subordination to, and governed by, the civil power."

In 1868, the above provision was replaced by the first sentence of Art. I § 24 of the present Constitution: "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace are dangerous to liberty, they ought not to be kept up, and the military should be kept under strict subordination to, and governed by, the civil power." To the foregoing, the Constitutional Convention of 1875 added a second sentence: "Nothing herein contained shall justify the practice of carrying concealed weapons, or prevent the Legislature from enacting penal statutes against said practice."

*Id.* at 545, 159 S.E.2d at 8-9.

Thus, Article I, Section 30 currently provides as follows:

A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace are dangerous to liberty, they shall not be maintained, and the military shall be kept under strict subordination to, and governed by, the civil power. Nothing herein shall justify the practice of carrying concealed weapons, or prevent the General Assembly from enacting penal statutes against that practice.

N.C. Const. art. I, § 30. The first phrase of Article I, Section 30, which was adopted in 1868, *see Dawson* at 545, 159 S.E.2d at 9, is exactly the same as the Second Amendment to the United States Constitution, except for punctuation. *Compare* U.S. Const. amend. II; N.C. Const. art. I, § 30. Furthermore, the individual right to keep and bear arms under Article I, Section 30 is the same or perhaps even a greater individual right than that as recognized under the Second Amendment. *See State v. Fennel*, 95 N.C. App. 140, 143, 382 S.E.2d 231, 233 (1989).

It is true, however, that the North Carolina Constitution has been interpreted to guarantee a broader right to individuals to keep and bear arms. North Carolina decisions have interpreted our Constitution as guaranteeing the right to bear arms to the people in a collective sense—similar to the concept of a militia— and also to individuals. Yet, as the Supreme Court of this state also noted, [t]hese decisions have consistently pointed out that the right of individuals to bear arms is not absolute, but is subject to regulation. The regulation must be reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.

*Fennell* at 143, 382 S.E.2d at 233 (citations, quotation marks, and ellipses omitted).

Defendant contends that he has an individual right to keep and bear arms under Article I, Section 30 of the North Carolina Constitution which provides "a broader right to individuals to keep and bear arms." *Id.* Due to the "broader" individual right to keep and bear arms under Article I, Section 30, *id.*, we need only consider the North Carolina Constitution and not attempt to determine under *Heller* the full extent of the individual right under the Second Amendment to keep and bear arms or whether the protections of the

Second Amendment are applicable to the states by incorporation through the Fourteenth Amendment. However, because the Second Amendment and Article I, Section 30 are worded the same in pertinent part, we must carefully consider whether *Heller's* holding and rationale should change the analysis this Court must apply to N.C. Gen. Stat. § 14-415.1 under Article I, Section 30. *See* U.S. Const., amend II; N.C. Const. art. I, § 30.

The right to keep and bear arms afforded by the North Carolina Constitution is subject to regulations which are "reasonable and not prohibitive" and which "bear a fair relation to the preservation of the public peace and safety." *Fennell* at 143, 382  S.E.2d at 233 (citation and quotation marks omitted). The rational basis standard for review of regulations upon the right to keep and bear arms has been articulated by North Carolina courts since at least 1921. *See State v. Kerner*, 181 N.C. 574; 579, 107 S.E. 222, 226 (1921) (Allen, J., concurring) ("The right to bear arms, which is protected and safeguarded by the Federal and State constitutions, is subject to the authority of the General Assembly, in the exercise of the police power, to regulate, but the regulation must be reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety."); *see generally Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) ("[T]he rational basis test or rational basis review applies, and this Court must inquire whether distinctions which are drawn by a challenged statute bear some rational relationship to a conceivable legitimate governmental interest." (citation, quotation marks, and ellipses omitted)). Our Supreme Court recently noted the rational basis standard in *Britt*: "This Court has held that regulation of the right to bear arms is a proper exercise of the General Assembly's police power, but that any regulation must be at least reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety." *Britt*, —— N.C. at ——, 681 S.E.2d at —— (citation and quotation marks omitted).

4. N.C. Gen. Stat. § 14-415.1

N.C. Gen. Stat. § 14-415.1(a) provides,

It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in G.S. 14-288.8(c). For the purposes of this section, a firearm is (i) any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a pro-

jectile by the action of an explosive, or its frame or receiver, or (ii) any firearm muffler or firearm silencer. This section does not apply to an antique firearm, as defined in G.S. 14-409.11.

N.C. Gen. Stat. § 14-415.1(a) (2007).

In *Britt*, this Court determined that N.C. Gen. Stat. § 14-415.1 bore a rational relation "to a legitimate state interest" and was therefore constitutional on those grounds. *Britt*, 185 N.C. App. at 614, 649 S.E.2d at 406. The Supreme Court reversed this Court's decision in *Britt*, but limited its holding to an as-applied challenge to the constitutionality of the 2004 amendment to N.C. Gen. Stat. § 14-415.1, which expanded "the prohibition on possession to all firearms by any person convicted of any felony, even within the convicted felon's own home and place of business." *Id.*, —— N.C. at ——, 681 S.E.2d at —— (citation omitted).

Our Supreme Court reviewed the history of N.C. Gen. Stat. § 14-415.1 in *Britt* as follows:

> [In 1987], N.C.G.S. § 14-415.1 only prohibited the possession of "any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches" by persons convicted of certain felonies, mostly of a violent or rebellious nature, "within five years from the date of such conviction, or unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such conviction, whichever is later."

> Subsequently, in 1995 the General Assembly amended N.C.G.S. § 14-415.1 to prohibit the possession of such firearms by all persons convicted of any felony, without regard to the date of conviction or the completion of the defendant's sentence. The 1995 amendment did not change the previous provision in N.C.G.S. § 14-415.1 stating that "nothing therein would prohibit the right of any person to have possession of a firearm within his own house or on his lawful place of business." However, in 2004 the General Assembly amended N.C.G.S. § 14-415.1 to extend the prohibition on possession to all firearms by any person convicted of any felony, even within the convicted felon's own home and place of business.

*Id.*, —— N.C. at ——, 681 S.E.2d at —— (citations and brackets omitted).

5. *District of Columbia v. Heller*

Defendant argues that *Heller* requires this Court to examine the restriction upon his right to keep and bear arms under strict scrutiny and that under the strict scrutiny analysis the 2004 amendment to N.C. Gen. Stat. § 14-415.1 is unconstitutional. However, defendant's arguments pursuant to *Heller* fail for several reasons.

First, we are not bound by decisions of the United States Supreme Court as to construction of North Carolina's constitution. *State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 104 (1998) ("In construing the North Carolina Constitution, this Court is not bound by the decisions of federal courts, including the United States Supreme Court." (citation omitted)). Secondly, *Heller* did not adopt a strict scrutiny standard, or indeed any specific standard, for review of laws regulating the right of an individual to keep and bear firearms.[1]

Third, even assuming *arguendo* that we are bound to interpret our constitution pursuant to United States Supreme Court cases *and* that *Heller* established strict scrutiny as the applicable level of scrutiny to be applied to regulations of an individual's right to keep and bear arms, we *still* cannot read *Heller* as extending an unqualified right to keep and bear arms to convicted felons. *See Heller* at ——, 171 L.E. 2d at 678. *Heller* provides,

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any man-

---

1. However, *Heller* did imply that rational basis scrutiny is not appropriate. *See Heller* at ——, 171 L.E. 2d at 679 n.27. In footnote 27, Justice Scalia stated that "Justice Breyer correctly notes that this law, like almost all laws, would pass rational-basis scrutiny. But rational-basis scrutiny is a mode of analysis we have used when evaluating laws under constitutional commands that are themselves prohibitions on irrational laws. In those cases, 'rational basis' is not just the standard of scrutiny, but the very substance of the constitutional guarantee. Obviously, the same test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms. If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Id.* (citations omitted). In turn, Justice Breyer's dissent "criticizes [the majority] for declining to establish a level of scrutiny for evaluating Second Amendment restrictions." *Id.* at ——, 171 L. Ed. 2d at 682; *see also State v. Hunter*, 195 P.3d 556, 563 (Wash. App. 2008) ("It is true that, pursuant to *Heller*, a restriction on the right to bear arms must meet a stricter standard of judicial review than 'rational-basis scrutiny,' (although exactly what standard must be met remains unclear." (citation omitted)).

ner whatsoever and for whatever purpose. . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, ***nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons*** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* (emphasis added and citations omitted).[2] *Heller's* final statement as to Mr. Heller's request to register his handgun was: "*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Id.* at ——, 171 L.E. 2d at 683-84 (emphasis added). Although *Heller* does not directly state how Mr. Heller might become "disqualified from the exercise of his Second Amendment rights," it appears, when this provision is read in the context of the entire opinion, that he might be "disqualified" if he were a felon[3] or mentally ill. *Id.* at , 171 L. Ed. 2d at 678-83.

Finally, in *Britt* our Supreme Court declined to adopt a strict scrutiny standard of review in a case involving this very statute, N.C. Gen. Stat. § 14-415.1. *See Britt,* —— N.C. at ——, 681 S.E.2d at—— n.2. The Supreme Court in *Britt* instead cited and quoted the rational basis test. *See id.*, —— N.C. at ——, 681 S.E.2d at ——. Thus, for us to adopt strict scrutiny, we would have to overrule decisions of the North Carolina Supreme Court, including an opinion dating back to before this Court was even formed. *See, e.g., Dawson* at 547, 159 S.E.2d at 10; *Kerner* at 579, 107 S.E. 222, 226 (Allen, J., concurring). However, we do not have authority to overrule decisions of the Su-

2. The Supreme Court's dicta regarding possession of firearms by felons has been criticized for its apparent wholesale approval of all such laws without analysis of any particular law. *See U.S. v. McCane,* —— F.3d —— (Okla. 2009 WL 2231658) (Tymkovich, J., concurring) ("The Court's summary treatment of felon dispossession in dictum forecloses the possibility of a more sophisticated interpretation of § 922(g)(1)'s scope. Applying *Heller's* individual right holding to various regulations would be complicated, and it is of course possible (if not probable) that different courts would articulate different standards. Already a number of commentators have considered and proposed approaches to the existing gun laws and the proper level of constitutional scrutiny. But the existence of on-point dicta regarding various regulations short-circuits at least some of the analysis and refinement that would otherwise take place in the lower courts." (citations omitted)).

3. The majority in *Heller* also did not specify whether it was referring to "felons" solely in the context of federal law or as generally used and separately defined by each state.

preme Court, *see Cannon v. Miller,* 313 N.C. 324, 324, 327 S.E.2d 888, 888 (1985) ("I[t] appearing that the panel of Judges of the Court of Appeals to which this case was assigned has acted under a misapprehension of its authority to overrule decisions of the Supreme Court of North Carolina and its responsibility to follow those decisions, until otherwise ordered by the Supreme Court."), and it is not the province of this Court to adopt a new standard for constitutional review, particularly in a situation where our Supreme Court has so recently declined to so hold. *See Britt,* —— N.C. at ——, 681 S.E.2d at —— n.2. As the level of constitutional scrutiny is unchanged, we are still bound to apply the rational basis test, *see, e.g., Dawson* at 547, 159 S.E.2d at 10, under which this Court has previously concluded that N.C. Gen. Stat. § 14-415.1 is constitutional.[4] *See Britt,* 185 N.C. App. 610, 649 S.E.2d 402.

6. Analysis

We therefore consider defendant's facial challenge to the constitutionality of N.C. Gen. Stat. § 14-415.1, which presents many of the same issues as presented to this Court in *Britt. See Britt,* 185 N.C. App., 610, 649 S.E.2d 402. Again, despite the fact that *Britt* has been reversed, it was only on an "as applied" basis, *see Britt,* —— N.C. ——, 681 S.E.2d 320, and thus we conclude that we are still bound by this Court's rationale, analysis, and holding in *Britt* as to the facial constitutionality of N.C. Gen. Stat. § 14-415.1. *See In re Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (citations omitted)).

In *Britt,* this Court stated:

A convicted felon is prohibited from possessing a firearm if the State shows a rational relation to a legitimate state interest, such as the safety and protection and preservation of the health and welfare of the citizens of this state. Legislative classifications

---

4. We recognize that if use of the rational basis standard results in a lesser level of protection of the right to keep and bear arms under Article I, Section 30 than the protection as conferred by the Second Amendment, use of the rational basis standard may not be appropriate, as our Court has stated that "the North Carolina Constitution has been interpreted to guarantee a broader right to individuals to keep and bear arms." *Fennell* at 143, 382 S.E.2d at 233. However, given the lack of authoritative direction from both *Heller* and *Britt* regarding the appropriate standard of review, we are still bound by precedent to use rational relation as the level of constitutional scrutiny in questions regarding an individual's right to keep and bear arms. *See, e.g., Dawson* at 547, 159 S.E.2d at 10.

will be upheld, provided the classification is founded upon reasonable distinctions, affects all persons similarly situated or engaged in the same business without discrimination, and has some reasonable relation to the public peace, welfare and safety. A court may not substitute its judgment of what is reasonable for that of the legislative body when the reasonableness of a particular classification is to be determined. Where the language of an Act is clear and unambiguous the courts must give the statute its plain and definite meaning.

In this case, plaintiff argues that a more appropriate legislation would allow convicted felons the ability to apply for restoration of the right to possess firearms. Plaintiff also argues that long guns, such as rifles and shotguns should be lawful for certain types of convicted felons to possess. We disagree. The General Assembly has made a determination that individuals who have been convicted of a felony offense shall not be able to possess a firearm. This statutory scheme which treats all felons the same, serves to protect and preserve the health, safety and welfare of the citizens of this State. Here, the legislature intended to prevent convicted felons from possessing firearms in its 2004 amendments. The 2004 amendment to N.C.G.S. § 14-415.1 is rationally related to a legitimate state interest.

*Britt*, 185 N.C. App. at 613-14, 649 S.E.2d at 405-06 (citations omitted).

Defendant here has not established "that no set of circumstances exists under which . . . [N.C. Gen. Stat. § 14-415.1] would be valid."[5] *Thompson* at 491, 508 S.E.2d at 282 ("An individual challenging the facial constitutionality of a legislative act must establish that no set of circumstances exists under which the act would be valid." (citation, quotation marks, and brackets omitted)). In fact, as discussed below, N.C. Gen. Stat. § 14-415.1 operates constitutionally as to defendant. This argument is overruled.

B. As Applied Challenge

Defendant also contends that N.C. Gen. Stat. § 14-415.1 is unconstitutional as applied to him because

---

5. Although the Supreme Court held N.C. Gen. Stat. § 14-415.1 was unconstitutional as applied to Mr. Britt, *see Britt*, —— N.C. ——, 681 S.E.2d 320, "[t]he fact that [the] statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Thompson* at 491, 508 S.E.2d at 282 (citation and quotation marks omitted).

[t]he indictment in this case alleged that the Defendant had been convicted in 1988 for possession of cocaine. R. pp 13-14. There is nothing inherently violent in [sic] possession of cocaine that would demonstrate that the Defendant's possession of a firearm would be a threat to public safety. The Defendant's record consists mostly of drug related offenses. No prior offenses had possession of a firearm as an essential element.

"[T]his Court must determine whether, as applied to plaintiff, N.C.G.S. § 14-415.1 is a reasonable regulation." *Britt*, —— N.C. at ——, 681 S.E.2d at ——. Our Supreme Court stated the pertinent facts as to Mr. Britt as follows:

Plaintiff pleaded guilty to one felony count of possession with intent to sell and deliver a controlled substance in 1979. The State does not argue that any aspect of plaintiff's crime involved violence or the threat of violence. Plaintiff completed his sentence without incident in 1982. Plaintiff's right to possess firearms was restored in 1987. No evidence has been presented which would indicate that plaintiff is dangerous or has ever misused firearms, either before his crime or in the seventeen years between restoration of his rights and adoption of N.C.G.S. § 14-415.1's complete ban on any possession of a firearm by him. Plaintiff sought out advice from his local Sheriff following the amendment of N.C.G.S. § 14-415.1 and willingly gave up his weapons when informed that possession would presumably violate the statute. Plaintiff, through his uncontested lifelong nonviolence towards other citizens, his thirty years of lawabiding conduct since his crime, his seventeen years of responsible, lawful firearm possession between 1987 and 2004, and his assiduous and proactive compliance with the 2004 amendment, has affirmatively demonstrated that he is not among the class of citizens who pose a threat to public peace and safety. Moreover, the nature of the 2004 amendment is relevant. The statute functioned as a total and permanent prohibition on possession of any type of firearm in any location. See N.C.G.S. § 14-415.1 (2004).

Based on the facts of plaintiff's crime, his long postconviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, the 2004 version of N.C.G.S. § 14-451.1 is an unreasonable regulation, not fairly related to the preservation of public peace and safety.

In particular, it is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety.

*Britt,* —— N.C. at ——, 681 S.E.2d at ——.

Thus, the *Supreme Court* in *Britt* focused on five factors in order to determine if N.C. Gen. Stat. § 14-415.1 is unconstitutional as applied to Mr. Britt: (1) the type of felony convictions, particularly whether they "involved violence or the threat of violence[,]" (2) the remoteness in time of the felony convictions; (3) the felon's history of "lawabiding conduct since [the] crime," (4) the felon's history of "responsible, lawful firearm possession" during a time period when possession of firearms was not prohibited, and (5) the felon's "assiduous and proactive compliance with the 2004 amendment." *Id.,* —— N.C. at ——, 681 S.E.2d at ——. In Mr. Britt's case, our Supreme Court held that N.C. Gen. Stat. § 14-415.1, as applied to Mr. Britt, was "an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Id.,* —— N.C. at ——, 681 S.E.2d at ——. We must therefore consider whether N.C. Gen. Stat. § 14-415.1 is a reasonable regulation which is "fairly related to the preservation of public peace and safety" as to defendant. *Id.,* —— N.C. at ——, 681 S.E.2d at ——.

We first note that the factors identified in *Britt* required findings of fact regarding the plaintiff. *See id.,* —— N.C. at ——, 681 S.E.2d at ——. Normally, the trial court finds facts, and the appellate courts do not engage in fact finding. *See Godfrey v. Zoning Bd. of Adjustment,* 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986) ("Fact finding is not a function of our appellate courts.") However, the trial court order in *Britt* did not find most of the facts regarding Mr. Britt as noted by the Supreme Court, and thus the Supreme Court apparently based its factual findings as to Mr. Britt upon the uncontroverted evidence presented before the trial court. Just as in *Britt,* the trial court here did not make findings of fact regarding defendant, but there was uncontroverted evidence presented as to defendant's prior convictions, his history of a lack of "lawabiding conduct since [the] crime," *Britt,* —— N.C. at ——, 681 S.E.2d at ——, and of firearm possession, and his compliance with the 2004 amendment. As these facts are not in dispute, we will analyze defendant's as applied challenge to N.C. Gen. Stat. § 14-415.1 in the same manner as did our Supreme Court in *Britt. See Britt,* —— N.C. at ——, 681 S.E.2d at ——.

As to defendant's previous felony convictions, defendant was convicted in 1988 for selling and delivering cocaine, in 1989 for indecent liberties with a minor, and in 2005 for possessing cocaine.[6] As with Mr. Britt, there is no indication that these crimes "involved violence or the threat of violence[,]" but whereas Mr. Britt had only one drug possession conviction, defendant herein has had three felony convictions, including indecent liberties with a minor. *Id.*, —— N.C. at ——, 681 S.E.2d at ——. Furthermore, Mr. Britt's felony convictions were more remote in time, as he was convicted in 1979; *id.*, —— N.C. at ——, 681 S.E.2d at ——, defendant's most recent felony conviction was in 2005. In addition to his felony convictions, defendant has demonstrated a blatant disregard for the law as he has been convicted of numerous misdemeanors: possession of drug paraphernalia in 1984; possession of cocaine in 1988; driving while impaired in 1987; driving while impaired in 1992; maintaining a place to keep controlled substances in 2000; misdemeanor possession of a controlled substance in 2008; and possession of drug paraphernalia in 2008. Just as in *Britt*, "[n]o evidence has been presented which would indicate that [defendant] is dangerous or has ever misused firearms" since his felony convictions; *id.*, —— N.C. at ——, 681 S.E.2d at ——; however, defendant acquired the guns at issue *after* N.C. Gen. Stat. § 14-415.1 specifically prohibited him from possessing them. Furthermore, in 2005 Detective Sergeant Dennis warned defendant about the 2004 change in the law and gave "him the benefit of the doubt that maybe he didn't know about it" so that defendant had an opportunity to remove the guns from his residence. In 2006, Officer Burns again discussed with defendant the fact that he was prohibited from possessing guns in his home. Defendant failed to heed both of these specific warnings. Instead of demonstrating "assiduous and proactive compliance with the 2004 amendment," defendant flagrantly violated it. *Id.*, —— N.C. at ——, 681 S.E.2d at ——. Thus, in considering the factors as noted by *Britt*, *see id.*, —— N.C. at ——, 681 S.E.2d at ——, we cannot conclude that N.C. Gen. Stat. § 14-415.1 is unconstitutional as applied to defendant.

As to defendant, N.C. Gen. Stat. § 14-415.1 is a reasonable regulation which is "fairly related to the preservation of public peace and safety." *Id.*, —— N.C. at ——, 681 S.E.2d at ——. It is not unreasonable to prohibit a convicted felon who has violated the law on numerous

___

6. Defendant's indictments for possession of a firearm by a felon were based upon his 1988 felony conviction, but as we must consider the defendant's history of "lawabiding conduct," *Britt*, —— N.C. at ——, 681 S.E.2d at ——, we note his more recent felonies also for purposes of this constitutional analysis.

occasions, even as recently as last year, and who ignored two valid warnings of his unlawful conduct, from possessing firearms in order to preserve "public peace and safety." *Id.*, —— N.C. at ——, 681 S.E.2d at ——. We therefore hold that N.C. Gen. Stat. § 14-415.1 is constitutional as applied to defendant. This argument is overruled.

## IV. *Ex Post Facto* and Bill of Attainder

**[2]** Defendant also contends that N.C. Gen. Stat. § 14-415.1 violates the prohibition against *ex post facto* laws and is an unconstitutional bill of attainder; however, these issues have previously been decided by this Court. *See State v. Johnson*, 169 N.C. App. 301, 303-10, 610 S.E.2d 739, 741-46 (concluding that N.C. Gen. Stat. § 14-415.1 does not violate prohibitions against *ex post facto* laws nor is it an unconstitutional bill of attainder), *review denied and appeal dismissed*, 359 N.C. 855, 619 S.E.2d 855 (2005); *see also State v. Watkins*, —— N.C. App. ——, ——, 672 S.E.2d 43, 52 (2009) (concluding that "defendant's increased sentence due to the change in the classification of his prior conviction serves only to enhance his punishment for the present offenses . . . and not to punish defendant for his prior conviction, the constitutional prohibition on ex post facto laws is not implicated"). Neither *Heller* nor *Britt* require any change in this Court's analysis of these issues. Accordingly, these arguments are overruled.

## V. Double Jeopardy

**[3]** Defendant also argues that

> the trial court erred in denying the defendant's motion to dismiss and consolidate indictments for possession of a firearm by a felon when the evidence supported only a single act of possession of multiple firearms. Convictions for multiple charges violated legislative intent and the defendant's constitutional right to be free from double jeopardy.

(Original in all caps.)

In *State v. Garris*, the defendant was convicted of, *inter alia*, "two counts of possession of a firearm by a felon[.]" —— N.C. App. ——, ——, 663 S.E.2d 340, 344, *disc. review denied*, 362 N.C. 684, 670 S.E.2d 907 (2008). The defendant argued that "the trial court erred by entering two felony convictions for possession of a firearm by a felon instead of one felony conviction." *Id.* at ——, 663 S.E.2d at 346. This Court concluded that

> a review of the applicable firearms statute shows no indication that the North Carolina Legislature intended for N.C. Gen. Stat.

§ 14-415.1(a) to impose multiple penalties for a defendant's simultaneous possession of multiple firearms. Here, defendant was not only convicted twice for possession of a firearm by a felon but was also sentenced twice, evidenced by File Numbers 06CRS053058 and 06CRS053059. The two firearms, both entered into evidence, originated out of the same act of possession. The firearms were possessed simultaneously because as defendant ran from the vehicle they were both on his person, either in his clothing or inside the black plastic bag he removed from the vehicle. Upon review, we hold that defendant should be convicted and sentenced only once for possession of a firearm by a felon based on his simultaneous possession of both firearms. Therefore, we find error with the trial court's decision to enter two convictions against defendant for possession of a firearm by a felon and to sentence defendant twice based on these convictions. We uphold the trial court's first conviction for possession of a firearm by a felon (06CRS053058) but reverse the second conviction (06CRS053059).

*Id.* at ——, 663 S.E.2d at 348.

The State argues that the case at bar and *Garris*

are dramatically different in that the trial court in *Garris* failed to arrest judgment on either of the two convictions. Thus, the defendant in *Garris* was not only convicted twice, but was also sentenced twice and subject to multiple penalties for his simultaneous possession of multiple firearms. *Garris* stands for the proposition that multiple penalties may not be imposed under N.C.G.S. § 14-415.1 for a defendant's simultaneous possession of multiple firearms.

However, we first note that in *Garris* this Court concluded that the trial court erred in "enter[ing] two convictions[,]" not merely in entering two sentences. *Id.* Also, instead of simply requiring the trial court to arrest judgment on one of the convictions, this Court reversed the second conviction entirely. *See id.* Thus, this Court's language and mandate in *Garris* indicates that multiple convictions for simultaneous possession of firearms by a felon is reversible error. *See id.* Furthermore, "[t]he legal effect of arresting judgment is to vacate the verdict and sentence. [However,] [t]he State may proceed against the defendants if it so desires, upon new and sufficient bills of indictment." *State v. Goforth*, 65 N.C. App. 302, 306, 309 S.E.2d 488, 492 (1983) (citations omitted). As the State could issue new indictments

STATE v. WHITAKER

[201 N.C. App. 190 (2009)]

against defendant upon the arrested judgments, defendant could be placed in double jeopardy. *See, e.g., id.* Therefore, pursuant to *Garris*, we reverse the ten convictions upon which judgment was arrested. *Garris* at ——, 663 S.E.2d at 348.

## VI. Conclusion

In conclusion, we reverse defendant's ten convictions for possession of a firearm by a felon where judgment was arrested. As to defendant's remaining conviction upon which he was sentenced, we find no error.

REVERSED IN PART and NO ERROR IN PART.

Judge ERVIN concurs.

Judge ELMORE concurs in part and dissents in part in a separate opinion.

ELMORE, Judge, concurring in part and dissenting in part.

For the reasons stated below, I respectfully dissent from part IV of the majority opinion. I concur by separate opinion in part III and concur fully in part V.

As the majority notes, I dissented from the majority opinion in *Britt I.*[7] Because the Supreme Court so clearly declined to base its decision reversing this Court's holding in *Britt I* on my dissent or any of the legal issues raised therein, I renew those same arguments here.

## Right to Bear Arms

I agree with the majority's analysis of *Heller* and its inapplicability to the case at bar. However, I disagree with what standard of review should be applied. The majority argues that we should apply rational basis review to defendant's constitutional challenge to N.C. Gen. Stat. § 14-415.1. As applied in *Rhyne v. K-Mart Corp.*, and as recited by the majority, to survive rational basis review, a challenged statute must "bear some rational relationship to a conceivable legitimate governmental interest." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quotations, citation, and alteration omitted). The Supreme Court in *Britt II* clearly stated that "any regulation of the right to bear arms . . . must be at least reasonable and not pro-

---

7. For ease of reference, I refer to the Court of Appeals 2007 *Britt* opinion as "*Britt I*" and the Supreme Court's 2009 *Britt* opinion as "*Britt II*."

hibitive, and must bear a fair relation to the preservation of the public peace and safety." *Britt v. North Carolina*, —— N.C. ——, ——, 681 S.E.2d 320, 322 (2009) (quotations and citation omitted). In my dissent from *Britt I*, I asserted that this was the proper standard of review, not rational basis as applied by the *Britt I* majority. *Britt v. North Carolina*, 185 N.C. App. 610, 621, 649 S.E.2d 402, 410 (2007) (Elmore, J., dissenting) ("Despite the majority's attempted reliance on *Johnson* for support of a rational relationship test, however, I believe that the proper standard, as articulated in *Johnson*, requires that the regulation must be reasonable and be related to the achievement of preserving public peace and safety. Rather than simply requiring that the statute be rationally related to a legitimate government purpose, I therefore would require that the regulation also be reasonable.") (quotations and citations omitted). The standard articulated by the Supreme Court in *Britt II* is more stringent than rational basis, although certainly less stringent than intermediate or strict scrutiny. Because the majority here continues to follow the majority opinion in *Britt I*, which I believe to have been wrongly decided, I renew my previous dissent from *Britt I*.

However, I agree with the conclusion reached by the majority in its analysis of defendant's as applied challenge. The majority interprets *Britt II* as having established a factors test for determining whether § 14-415.1 is a reasonable regulation. The factors articulated by the majority follow logically from the Supreme Court's analysis in *Britt II*; the pivotal question that application of those factors seeks to answer is whether the statute, as applied to defendant, is "an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Britt II*, —— N.C. at ——, 681 S.E.2d at 323.[8] For the reasons stated in the majority, I would also hold that § 14-415.1 is not unconstitutional as applied to defendant.

### *Ex Post Facto* and Bill of Attainder

As when I dissented in *Britt I*, I believe that § 14-415.1 violates the prohibition against *ex post facto* laws. The 2004 amendments to the statute renders this Court's analysis in *Johnson* easily distin-

---

8. With respect to the majority's concern that *Britt II* has enabled or even required appellate courts to engage in fact finding, I do not believe this to be an issue in this case or other criminal cases. Mr. Britt filed a civil suit against the State, and the parties then moved for summary judgment. The trial court granted the State's motion for summary judgment, resulting in an order..Here, we are dealing with a criminal defendant. The relevant facts are uncontroverted and were tried before a jury. We merely recite facts as represented during the trial phase, just as we would in any other criminal case.

guishable from both the case at bar and *Britt*. To that end, I repeat the arguments I put forth in my earlier dissent:

> In *Johnson* . . . we held that the 1995 statute was constitutional. At that time, it was clear to this Court that the intent of [the] legislature was to regulate the possession of dangerous weapons. Likewise, we held "that the law [was] not so punitive in effect that it should be considered punitive rather than regulatory." [*Johnson*, 169 N.C. App. at 308, 610 S.E.2d at 744.] In so holding, this Court relied on the following facts: "[The law] continue[d] to exempt the possession of firearms within one's home or lawful place of business. The prohibition remain[ed] limited to weapons that, because of their concealability, pose a unique risk to public safety." *Id.* (quoting [*United States v. Farrow*, 364 F.3d 551, 555 (4th Cir. 2004)]) (citations, quotations, and alterations omitted).
>
> Applying the same analysis to the statute as amended, I would reach a different result. The amended statute does not exempt the possession of firearms within one's home or business. Furthermore, rather than limiting the proscription "to weapons that, because of their concealability, pose a unique risk to public safety," the legislature broadened the ban to essentially all weapons. *Id.* (citations and quotations omitted). The result is that the statute is no longer "narrowly tailored to regulate only the sorts of firearm possession by felons that, because of the concealability, power, or location of the firearm, are most likely to endanger the general public," as it was when the *Farrow* court reached its decision. *Farrow*, 364 F.3d at 555 (citation and quotations omitted). The exceptional broadness of the statute serves to undermine the legislature's stated intent of regulation and serves instead as an unconstitutional punishment.
>
> I would also hold that the application of the statute to [defendant] violated [defendant's]] due process rights. I recognize that "the right of individuals to bear arms is not absolute, but is subject to regulation." *Johnson*, 169 N.C. App. at 311, 610 S.E.2d at 746 (quoting *State v. Dawson*, 272 N.C. 535, 546, 159 S.E.2d 1, 9 (1968)). . . . The major differences between the 1995 and current versions of the statute lead me to conclude that the statute in its current form is no longer a reasonable regulation. Instead, I would hold that the current statute operates as an outright ban, completely divesting [defendant] of his right to bear arms without

due process of law. *Cf. id.* (holding that the *Johnson* defendant was not "completely divested of his right to bear arms as [the then current] N.C. Gen. Stat. § 14-415.1 allow[ed] him to possess a firearm at his home or place of business.").

In enacting the 2004 amendment, the legislature simply over-reached. Thereafter, the statute operated as a punishment, rather than a regulation.

*Britt I*, 185 N.C. App. at 620-21, 649 S.E.2d at 409-10 (Elmore, J., dissenting) (footnotes omitted).

Because I believe that § 14-415.1 operates as a punishment, rather than as a regulation, I would also find the statute to be an unconstitutional bill of attainder.