**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-5269**

_____

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

     v.

JEFFREY ALLEN BRADY,

            Defendant – Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Thomas David Schroeder, District Judge. (1:09-cr-00368-TDS-1)

_____

Submitted:  June 21, 2011         Decided:  July 13, 2011

_____

Before DUNCAN, DAVIS, and KEENAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Louis C. Allen, Federal Public Defender, John A. Dusenbury, Jr., Assistant Federal Public Defender, Greensboro, North Carolina, Elizabeth A. Flagg, Research & Writing Attorney, Winston-Salem, North Carolina, for Appellant. Ripley Rand, United States Attorney, Michael F. Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeffrey Allen Brady pled guilty without a plea agreement to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2006). The district court concluded that Brady had at least three prior "violent felony" or "serious drug offense" convictions ("the 1980s convictions")[*] and that Brady was thus an armed career criminal under the Armed Career Criminal Act ("ACCA"), see 18 U.S.C. § 924(e), and U.S. Sentencing Guidelines Manual ("USSG") § 4B1.4 (2009). The court sentenced Brady to 180 months' imprisonment, the statutory minimum sentence required by the ACCA. Brady challenges this sentence on appeal, arguing that the district court erred in sentencing him as an armed career criminal because the 1980s convictions do not qualify as ACCA predicates. Brady also argues that the district court committed plain error in sentencing him as an armed career criminal because the indictment did not charge a violation of the ACCA and he did not admit to those facts necessary to justify an ACCA

---

[*] Specifically, Brady had the following prior convictions at the time of his arrest in 2008: (1) a January 1984 conviction for selling and delivering methylenedioxyamphetamine; (2) January 1984 convictions for selling and delivering LSD; and (3) an August 1986 conviction for assault with a deadly weapon inflicting serious injury.

2

sentence.  We disagree, and, for the reasons that follow, we affirm.

I.

Section 4B1.4 of the Sentencing Guidelines provides for the imposition of an enhanced sentence on any person who is an armed career criminal, as defined by 18 U.S.C. § 924(e)(1). USSG § 4B1.4(a) & cmt. n.1.  Section 924(e)(1) of Title 18 is applicable to any person who violates 18 U.S.C. § 922(g) and has three or more previous "violent felony" or "serious drug offense" convictions.  As this court has explained, such predicate convictions must be "of the type referred to in [18 U.S.C.] § 922(g)(1)."  United States v. Clark, 993 F.2d 402, 403 (4th Cir. 1993).  Section 922(g)(1) of Title 18 applies to convictions for crimes "punishable by imprisonment for a term exceeding one year."  However, as this court recognized in United States v. O'Neal, 180 F.3d 115, 119 (4th Cir. 1999), there is "an important exception."  Section 921(a)(20) of Title 18 excludes from qualification as a crime "punishable by imprisonment for a term exceeding one year":

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

3

18 U.S.C. § 921(a)(20)(2006).

In determining whether state law provides that a defendant's civil rights have been restored, we "look to the whole of state law." Clark, 993 F.2d at 403 (internal quotation marks omitted). "This inquiry requires an analysis of whether and to what extent [North Carolina] restores the civil rights of ex-felons." United States v. Essick, 935 F.2d 28, 30 (4th Cir. 1991) (internal quotation marks omitted).

North Carolina law restores to convicted felons some civil rights upon release from imprisonment. See N.C. Gen. Stat. § 13-1(1) (2009). Brady was released from prison after serving imprisonment terms for the 1980s convictions on March 24, 1990. Upon his release, Brady regained his "rights of citizenship," including his rights to vote, hold office, and serve on a jury. See N.C. Gen. Stat. § 13-1(1); United States v. McLean, 904 F.2d 216, 217 n.1 (4th Cir. 1990).

Brady, however, did not immediately regain the right to possess a firearm at the time of his release. At that time, North Carolina's Felony Firearms Act ("NCFFA"), N.C. Gen. Stat. § 14-415.1(a), provided that convicted felons could possess long guns anywhere and firearms in their home or lawful place of business and regained the right to possess all firearms five years after release from prison. See O'Neal, 180 F.3d at 120-

4

Effective December 1, 1995, North Carolina amended the NCFFA to replace the five-year ban with a permanent ban on a convicted felon's right to possess certain firearms; the 1995 amendment, however, did not alter the provision permitting a convicted felon to possess a long gun or a firearm in his home or lawful place of business. See United States v. Farrow, 364 F.3d 551, 554 (4th Cir. 2004). Effective December 1, 2004, North Carolina again amended the NCFFA, this time prohibiting convicted felons from possessing any and all firearms. N.C. Gen. Stat. § 14-415.1(a) (2004).

In Brady's view, the district court erred in sentencing him as an armed career criminal because, five years after he was discharged from the custody of the North Carolina Department of Correction, his civil rights were restored as to each of the 1980s convictions and, as a result, such convictions do not qualify as ACCA predicates. Although acknowledging that North Carolina amended the NCFFA in 2004 to prohibit convicted felons from possessing firearms under any circumstances, Brady contends that the 2004 amendment cannot deprive him of his fundamental right to possess a firearm in his residence, see McDonald v. City of Chicago, 130 S. Ct. 3020, 3050 (2010); District of Columbia v. Heller, 554 U.S. 570, 635-36 (2008), without violating the Ex Post Facto Clause of the Constitution.

5

A.

Brady correctly notes that, by operation of law, his right to possess any and all firearms was fully restored to him under North Carolina law on March 24, 1995, five years after his release from prison after he completed the prison sentences for the 1980s convictions. See O'Neal, 180 F.3d at 121 (applying the law in effect at the time of the defendant's discharge from prison to determine the right of the defendant to possess firearms). However, the 2004 amendment to the NCFFA retroactively stripped Brady of this previously restored right. See N.C. Gen. Stat. § 14-415.1(a) (2004); Britt v. State, 649 S.E.2d 402, 406 (N.C. Ct. App. 2007), rev'd on other grounds by Britt v. State, 681 S.E.2d 320, 323 (N.C. 2009).

Whether the 2004 amendment to the NCFFA is ex post facto as applied to Brady is a question of law we review de novo. Farrow, 364 F.3d at 554. The Ex Post Facto Clause of the Constitution prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). The Supreme Court has defined the latter part of this rule as prohibiting laws that retroactively "increase[] the penalty by which a crime is punishable." Ca. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995). In O'Neal, this court observed that:

6

> "Punishment" and "penalty" are constitutional terms of art, defined in contra distinction to laws that are "civil" or involve "regulation of a present situation." While laws that retroactively increase "punishment" or impose a "penalty" violate the Ex Post Facto Clause, retroactive civil or regulatory ones do not.

O'Neal, 180 F.3d at 121-22 (internal citations omitted).

In determining whether a law is punitive or regulatory in nature, courts apply a two-part test. A court should first ask "whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law." Id. at 122. Second, a court should determine whether the effect of the law is "so punitive in fact that the law may not legitimately be viewed as civil in nature." Id. (internal quotation marks omitted). The analysis under this second part of the test "focuses upon whether the sanction or disability that the law imposes may rationally be connected to the legislature's non-punitive intent, or rather appears excessive in light of that intent." Id. (internal quotation marks omitted).

In O'Neal, this court rejected the argument that retroactive application of the former five-year ban on handgun possession codified in the version of the NCFFA in effect in 1983 was punitive and therefore unconstitutional under the Ex Post Facto Clause. With regard to the first prong of the ex

post facto analysis, the court relied on several North Carolina decisions rejecting ex post facto challenges to earlier versions of section 14-415.1. O'Neal, 180 F.3d at 123. In view of these decisions, this court concluded that "North Carolina has made clear that its intent was to enact a civil disability to protect the public from those, felons, whose possession of guns there was the most reason to fear, not to impose any punishment or penalty on felons." Id. In addressing the second part of the analysis, the court concluded that the effect of the five-year ban was not "so punitive in fact" that the law should be considered punitive in nature and that the probationary period provided an additional civil disability in an effort to protect the public. Id. at 124.

In Farrow, this court rejected a similar argument challenging as ex post facto the retroactive application of the 1995 amendment to the NCFFA. In finding no violation of the Ex Post Facto Clause, this court cited O'Neal as controlling. Farrow, 364 F.3d at 555. Additionally, the Farrow court concluded that the indefinite ban in the 1995 amendment was "rationally connected to the state's legitimate interest in protecting the public." Id.

With respect to the 2004 amendment, recent decisions from the Court of Appeals of North Carolina ("CANC") and the Supreme Court of North Carolina ("SCNC") make clear that the

8

intent of the North Carolina legislature was to enact a civil disability to protect the public and that this disability is rationally related to that non-punitive intent.

In 2007, the CANC rejected the claim that retroactive application of the 2004 amendment to the NCFFA was ex post facto. Britt, 649 S.E.2d at 406-07 ("Britt I"). Although the SCNC later reversed Britt I, it did so on alternate grounds, leaving intact the ex post facto analysis performed by the CANC. Britt, 681 S.E.2d at 322-23 ("Britt II"). In 2010, the SCNC explicitly rejected a claim that the 2004 amendment to the NCFFA was an unconstitutional ex post facto law. State v. Whitaker, 700 S.E.2d 215, 220 (N.C. 2010). Specifically, the court concluded that the ban was not punitive in nature since its intent was to protect the public from future violent actions of those considered dangerous or who had demonstrated a heightened disregard for the law. Id. at 218. The SCNC noted support for its conclusion in the Heller decision, in which the Supreme Court of the United States described bans on possession of firearms by convicted felons as regulatory action. Id. at 218-19 (citing Heller, 554 U.S. at 627 & n.26 (characterizing long-standing prohibitions such as the ban on possession of firearms by convicted felons as "presumptively lawful regulatory measures")). The SCNC also concluded that the 2004 amendment was rationally connected to the non-punitive purpose of

9

protecting public safety, id. at 219, and was not excessive in light of that purpose. Id.

Taken together, then, O'Neal, Farrow, Britt I, Britt II, and Whitaker uphold as constitutional the proposition that the NCFFA, as amended in 2004, is not an unconstitutional ex post facto law. The law may therefore be applied to Brady to retroactively strip him of his previously restored right to possess firearms without violating the Ex Post Facto Clause.

B.

Brady has not suggested in his appellate briefs that such a stripping of a restored right to possess firearms would not effectively revive a previously negated predicate conviction for purposes of §§ 922(g)(1) and 924(e), and we conclude that the 1980s convictions were available as predicate convictions for purposes of §§ 922(g)(1) and 924(e). See Melvin v. United States, 78 F.3d 327, 330 (7th Cir. 1996). Accordingly, we reject Brady's argument that the district court erred in sentencing him as an armed career criminal under USSG § 4B1.4 and 18 U.S.C. § 924(e).

II.

Brady also argues that the district court committed plain error in sentencing him as an armed career criminal

10

because the indictment did not charge a violation of the ACCA and he did not admit to those facts necessary to justify an ACCA sentence.  As Brady correctly acknowledges, however, this claim is foreclosed by controlling Circuit precedent.  See United States v. Thompson, 421 F.3d 278, 284 n.4 (4th Cir. 2005) (holding that an indictment need not reference or list the prior convictions used to enhance a sentence); United States v. Cheek, 415 F.3d 349, 352-54 (4th Cir. 2005) (holding that prior convictions used as the basis for an armed career criminal sentence need not be charged in the indictment or proven beyond a reasonable doubt).

## III.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11